UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:21-cr-00264-1 |
| v. | ) | |
| | ) | CHIEF JUDGE CRENSHAW |
| BRIAN KELSEY | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT KELSEY'S
## MOTIONS TO WITHDRAW GUILTY PLEA AND FILE MOTION TO DISMISS

The United States of America, through Henry C. Leventis, United States Attorney for the Middle District of Tennessee, Assistant United States Attorney Amanda J. Klopf, Corey R. Amundson, Chief of the Public Integrity Section of the United States Department of Justice, Trial Attorney John P. Taddei, Reagan Fondren, First Assistant United States Attorney for the Western District of Tennessee, and Assistant United States Attorney David Pritchard (collectively, "government"), hereby provides its response to defendant Brian Kelsey's motions to withdraw his guilty pleas and for leave to file a motion to dismiss all counts of the Indictment. DE 93 ("Mot.").

For the reasons that follow, the defendant's motion to withdraw his guilty pleas should be denied because he pleaded guilty knowingly and intelligently and has failed to demonstrate any fair and just reason for withdrawal. Because this Court should deny the defendant's request to withdraw his pleas, his request for leave to file a motion to dismiss should be denied as moot.

## FACTUAL BACKGROUND

### I.  The Defendant is an Attorney and Former State Legislator.

The defendant is an attorney. DE 73 at 5 (plea agreement). He received a Juris Doctorate degree from Georgetown University Law Center and a bachelor's degree from the University of North Carolina at Chapel Hill, where he graduated with honors. (Presentence Investigation Report ("PSR") ¶¶ 71-72.) The defendant was also a lawmaker for almost two decades, during which time

he was involved in numerous aspects of criminal law and the criminal justice system. From November 2004 through November 2022, the defendant served as an elected Member of the Tennessee General Assembly. (PSR ¶ 75.) He was elected a Tennessee State Senator in 2009 and became chairman of the Senate Judiciary Committee in 2013. *See* https://www.capitol.tn.gov/senate/archives/109GA/members/s31.html; https://www.capitol.tn.gov/senate/archives/109GA/Committees/judiciary.html (last accessed April 14, 2023). During the defendant's time in the General Assembly, he sponsored or co-sponsored hundreds of pieces of legislation, including bills that specifically addressed criminal process and collateral consequences for criminal convictions. (Ex. A (Summary of Bills Related to Criminal Law or Justice Sponsored or Co-Sponsored by the Defendant)).

II.     **Before Indictment, the Government Presents Kelsey with the Evidence and Likely Charges Against Him; Kelsey Rejects the Government's Pre-Indictment Plea Offer.**

In May 2021, the government served the defendant's attorney, Kory Langhofer, a letter stating that the government had received information that the defendant may have engaged in conduct that violated various federal laws including, but not limited to, making illegal coordinated campaign expenditures; accepting excessive campaign contributions; directing, transferring, and receiving prohibited "soft money" in connection with a federal election; and conspiracy. (Ex. B (5/28/21 Target Ltr.)). A few days later, attorney Ty Howard informed the government that he represented the defendant and that the defendant had received the letter. In early July 2021, Mr. Howard informed the government that attorney David Warrington had joined him as co-counsel representing Kelsey.

In July and August 2021, the government, Mr. Howard, Mr. Warrington, and the defendant engaged in extensive negotiations regarding a potential pre-indictment guilty plea. In mid-August

2

2021, the government conducted a reverse proffer session with the defendant, Mr. Howard, and Mr. Warrington, during which the government presented evidence of the defendant's involvement in illegal campaign contribution schemes related to his 2016 campaign for the U.S. House of Representatives. The presentation included a description of potential charges based on the defendant's conduct, which included the offenses listed in the May 2021 letter. Following this presentation, Mr. Howard informed the government that "Kelsey was interested in pursuing pre-charging plea negotiations" and would "give prompt consideration to any offer [the government] extend[ed]." (Ex. C (8/20/21 Howard Email)). During these negotiations, the government consistently maintained that any pre-indictment resolution would require, at a minimum, the defendant to plead guilty to a felony offense related to his campaign finance schemes. Ultimately, the government offered Kelsey the opportunity to plead guilty to a one-count criminal information charging conspiracy, in violation of 18 U.S.C. § 371.

On September 3, 2021, Mr. Howard informed the government that the defendant would not accept the government's offer due, in part, to the defendant's concern that a felony conviction "will mean the loss of his livelihood and risk [of] significant incarceration." (Ex. D (9/3/21 Howard Ltr.)). In a follow-up letter, Mr. Howard outlined reasons for why, in his view, the government should not charge Kelsey. (Ex. E (10/1/21 Howard Ltr.)). In that letter and during plea negotiations, Mr. Howard and Mr. Warrington raised many of the same arguments that the defendant now raises in his motion to withdraw his guilty pleas. *See id.* at 7-10.

### III.  **The Grand Jury Indicts the Defendant; the Defendant Hires New Counsel and Requests a Year-Long Continuance of the Trial Date.**

In October 2021, a grand jury returned a five-count Indictment charging Kelsey with conspiracy to defraud the United States by obstructing the lawful functions of the Federal Election

3

Commission ("FEC") (also known as a *Klein* conspiracy), in violation of 18 U.S.C. § 371 (Count 1); aiding and abetting the solicitation, receipt, direction, transfer, and spending of $25,000 and more of soft money in connection with a federal election, in violation of Title 52 U.S.C. §§ 30125(e)(1)(A) and 30109(d)(1)(A)(i), and 18 U.S.C. § 2 (Count 2); aiding and abetting the spending of $25,000 and more of soft money from a State officeholder in connection with a federal election, in violation of 52 U.S.C. §§ 30125(f)(1), 30101(20)(A)(iii), and 30109(d)(1)(A)(i), and 18 U.S.C. § 2 (Count 3); aiding and abetting the making of excessive contributions, in violation of 52 U.S.C. §§ 30116(a)(1)(A), 30116(a)(7)(B)(i), and 30109(d)(1)(A)(i), and 18 U.S.C. § 2 (Count 4); and aiding and abetting the acceptance of excessive contributions, in violation of 52 U.S.C. §§ 30116(a)(1)(A), 30116(a)(7)(B)(i), 30116(f), and 30109(d)(1)(A)(i), and 18 U.S.C. § 2 (Count 5).[1] DE 1. These offenses were identified in the government's May 2021 letter and August 2021 reverse proffer and were discussed during the parties' pre-indictment plea negotiations.

The Court set the case for a jury trial on January 18, 2022. DE 25. Following the defendant's arraignment, attorneys Paul Bruno, David Rivera, and Jerry Martin entered appearances on the defendant's behalf and Mr. Howard withdrew from the case. ECF Nos. 23, 24. Mr. Bruno is an experienced criminal defense attorney who recently completed a months-long trial before this Court. *See United States v. Frazier et al.*, No. 3:17-cr-00130 (M.D. Tenn.). Mr. Rivera and Mr. Martin are experienced criminal litigators who each served as U.S. Attorney for the Middle District of Tennessee from April 2013 through March 2017 and May 2010 through April 2013, respectively. Following the retention of his new counsel, the defendant waived his right to a speedy

---

[1] Joshua Smith was also charged in Counts 1-3 of the Indictment. In October 2022, Smith pleaded guilty to Count 2. ECF No. 63. His sentencing hearing has been continued pending the resolution of Kelsey's instant motion to withdraw his pleas. ECF No. 96.

4

trial and requested that his trial date be continued more than a year. *See* DE 33. The government did not oppose, and trial was postponed until January 23, 2023. *Id.*

## IV. In Fall 2022, the Parties Reengage Plea Negotiations; After Several Weeks of Discussions, the Defendant Requests a Hearing to Change His Plea.

On October 20, 2022, the government advised defense counsel that the defendant's deadline to enter an open plea, as set forth in the Court's scheduling order, DE 37 at 2, was approaching and asked whether the defendant was interested in a pre-trial resolution. Mr. Bruno responded that he was speaking with the defendant that afternoon and would get back to the government after that conversation. (Ex. F (10/20/22 Bruno Email)). On October 24, 2022, Mr. Bruno informed the government that the defense team would like to meet with the government that week to discuss the parameters of a possible plea agreement in this case.

On October 25, the government met with counsel and offered the framework of a potential plea. The primary condition was that the defendant plead guilty to two felonies: Count 1 (*Klein* conspiracy) and at least one of the substantive offenses charged in Counts 2-5. Counsel asked whether the government would consider omitting the standard condition that the defendant waive his right to appeal his convictions. Counsel stated that the defendant had developed constitutional and legal challenges to the Indictment and wanted to preserve the ability to raise them on appeal. The government stated that any final plea agreement would need to include the standard appellate waiver. The government requested that counsel inform the government by October 27 whether the defendant was prepared to plead guilty to Count 1 and one of the additional Counts, upon which time the parties would move forward with negotiating the finer details of an agreement.

On October 27, counsel orally informed the government that the defendant had agreed in principle to plead guilty to Counts 1 and 5 of the Indictment and requested that the government

provide counsel with a draft plea agreement so the parties could continue negotiating the details. The same day, the defendant filed a motion to set a change of plea hearing and stay the deadlines in the Court's scheduling order. DE 68. Over the next few weeks, the parties exchanged drafts of the plea agreement as they negotiated the factual basis and Sentencing Guidelines stipulations. On November 18—a month after the parties reengaged plea negotiations—the parties reached a final consensus on the terms of the plea agreement. (Ex. G (Redacted 11/18/22 Klopf Email)). The Court scheduled the defendant's change of plea hearing for November 22, 2022, stayed all pretrial deadlines, and cancelled the trial that had been scheduled for January 2023.

## V. Following an Extensive Rule 11 Colloquy, this Court Accepts the Defendant's Guilty Pleas to Counts 1 and 5.

On November 22, 2022, the defendant appeared before this Court and pleaded guilty to Counts 1 and 5 of the Indictment. The Court conducted a detailed colloquy pursuant to Federal Rule of Criminal Procedure 11 that mirrored the content of the written plea agreement and the defendant's plea petition. *See* ECF Nos. 72 (plea petition), 73 (plea agreement). The Court began by addressing the elements of the offenses charged in Counts 1 and 5. DE 83 (11/22/22 Plea H'g Tr. 6-8) ("Tr"). The defendant affirmed that he "had extensive discussions with [his] counsel about each one of" the offenses and that he had no questions for the Court. *Id.*

The Court informed the defendant that, under Rule 11(c)(1)(B), if the Court accepted his plea, his "plea is forever" and that he "can't come back tomorrow or next week or next year or any time and decide I think I want a trial; I think my lawyers can do this, that or the other." *Id.* The Court reiterated that the defendant was "giving up forever [his] right to trial and all the attendant things that [he] could do at trial." *Id.* The defendant affirmed that was what he wanted. *Id.*

Next, the Court guided the defendant through his written plea agreement, confirming that

the defendant had read "each and every word" of the factual basis supporting his pleas, had initialed each page, and confirmed that the information was true and correct. *Id.* at 8-10; *see* DE 73 at 4-9. The Court then addressed the sentencing process, reminding the defendant that the Court had the ultimate discretion to determine the defendant's sentence and that any estimate of his punishment that his counsel had previously provided "won't make any difference as to the plea that that you're offering me today. Your plea would still be effective." Tr. 10-11. The defendant again affirmed his desire to plead guilty. *Id.* at 11.

The defendant affirmed he was not under the influence of drugs or alcohol and that there was nothing unduly influencing or pressuring him to plead guilty. *Id.* at 15-16. The defendant confirmed that, after consulting with his attorneys, he "made the final decision to enter a plea on these two counts" because he "came to the firm and definite opinion that the best thing for Brian Kelsey was to enter a plea." *Id.* at 16-17.

Having concluded all the requirements for a valid plea colloquy pursuant to Rule 11, the Court gave the defendant several more opportunities to terminate the plea proceedings. *Id.* at 18-19. The defendant repeatedly declined to do so and pleaded guilty to Counts 1 and 5 of the Indictment. *Id.* The Court assessed that the defendant's pleas were knowing, intelligent, and voluntary, accepted them, and adjudged the defendant guilty on Counts 1 and 5. *Id.* at 19-20. The Court reserved acceptance of the parties' plea agreement pending sentencing. DE 73.

## VI. __Months After Pleading Guilty, and After Receiving the PSR, the Defendant Has Mr. Warrington File a Motion to Withdraw his Pleas.__

The Court scheduled the defendant's sentencing for March 28, 2023. DE 80. The Probation Office issued the PSR to the parties on March 8, 2023. The PSR included additional information about the defendant's offenses and background and calculated an advisory Sentencing Guidelines

range that tracked the estimates that had been included in the parties' plea agreement. On March 14, Mr. Warrington—who had participated in pre-indictment plea negotiations alongside Mr. Howard in summer 2021—entered an appearance on behalf of the defendant for the first time. DE 86. On March 16—less than two weeks before the scheduled sentencing date—Mr. Warrington sent an email to the government stating that the defendant "intends to file a motion to withdraw his plea and a motion to dismiss the charges against him." (Ex. H (3/16/23 Warrington Email)). Mr. Warrington did not copy the defendant's preexisting counsel—Mr. Bruno, Mr. Rivera, and Mr. Martin—on the email. The next day, March 17, Mr. Warrington filed motions to withdraw the defendant's guilty pleas and for leave to file a motion to dismiss all counts of the Indictment. DE 93. One hundred and fifteen (115) days had passed since the defendant entered his guilty pleas before this Court on November 22, 2022.

Mr. Bruno, Mr. Rivera, and Mr. Martin were not listed as counsel representing Mr. Kelsey in the motion to withdraw. *See* DE 93 at 18. Mr. Bruno informed the government that Mr. Warrington represents the defendant regarding the motion to withdraw and that Mr. Bruno, Mr. Rivera, and Mr. Martin are not litigating the motion. Mr. Bruno stated that he, Mr. Rivera, and Mr. Martin remain counsel to the defendant with respect to his sentencing proceedings, which have been continued indefinitely pending resolution of the instant motion to withdraw, DE 96.

## ARGUMENT

### I.     The Defendant Fails to Show Any Fair and Just Reason to Withdraw His Pleas.

A defendant may withdraw a guilty plea "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "This rule is designed to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical

8

decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *United States v. Ellis*, 470 F.3d 275, 280-81 (6th Cir. 2006) (citations and internal quotation marks omitted). The Sixth Circuit "considers a number of factors to determine whether [a] Defendant meets the burden of proving that the withdrawal of his guilty plea is for a fair and just reason, including:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* at 281 (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)). "The factors listed are a general, non-exclusive list and no one factor is controlling." *Id.* (citation and internal quotation marks omitted).

Citing out-of-circuit authority, the defendant claims that "[t]he 'fair and just' standard is 'applied liberally,' and a motion to withdraw filed prior to sentencing is to be 'liberally construed.'" Mot. 3 (citing *United States v. Davis*, 428 F.3d 802, 805 (9th Cir. 2005); *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988)). However, that is not the standard for a court-accepted guilty plea within the Sixth Circuit. Rather, in this Circuit, "[a] defendant does not have an absolute right to withdraw a guilty plea and bears the burden of proving that he is entitled to withdraw his guilty plea." *Ellis*, 470 F.2d at 280 (citations omitted). "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." *Id.* (citation and internal quotation marks omitted). That is because "[t]he withdrawal of a guilty plea is inherently in derogation of the public interest in finality and the orderly administration of justice." *Id.* (citation

9

and internal quotation marks omitted).

Properly considered, none of the *Bashara* factors support the defendant's motion to withdraw his pleas. The defendant is an attorney who graduated from an elite college and an elite law school. He was an elected Tennessee State lawmaker for 18 years, sponsoring numerous pieces of legislation related to the criminal justice system, and was even chairman of the Tennessee Senate Judiciary Committee, through which legislation related to the criminal justice system passed. The defendant decided to plead guilty to Counts 1 and 5 of the Indictment after his personal participation in intricate plea negotiations that spanned years and while he was represented by experienced criminal defense counsel, including two former U.S. Attorneys from this District. Counts 1 and 5 charged federal campaign finance crimes—excessive contributions to the defendant's federal campaign in the form of illegal coordination of expenditures made by a supposedly independent third-party organization (Count 5) and a *Klein* conspiracy to defraud and obstruct the FEC (Count 1)—that the Sixth Circuit and U.S. Supreme Court have repeatedly affirmed. After entering his pleas pursuant to a rigorous Rule 11 colloquy conducted by this Court, the defendant waited 115 days before filing his motion to withdraw, less than two weeks before his scheduled sentencing. His excuses for his delay and explanation for his claimed confusion leading up to his plea—the birth of his children more than two months prior to his plea and his father's longstanding illness—are insufficient to support withdrawal. The defendant's delay tactics have prejudiced the government in a case that is based on conduct that occurred in 2016 and largely relies on witnesses' detailed memories.

The defendant identifies no case in which a court has permitted a defendant so sophisticated to withdraw a valid plea so late with so little justification. To permit the defendant to withdraw his

10

plea now would create an unwarranted disparity with the overwhelming number of less sophisticated defendants, often facing potential terms of imprisonment longer than the defendant faces, who are routinely, and correctly, denied requests to withdraw pleas. The defendant's motion for withdrawal should likewise be denied.

A. **115 days elapsed between the defendant's pleas and his motion to withdraw.**

The length of time between the defendant's pleas and his motion to withdraw, alone, counsels in favor of denying his motion. The defendant filed his motion to withdraw on March 17, 2023, 115 days after he pleaded guilty on November 22, 2022. "The shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time." *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (citation and internal quotation marks omitted). The Sixth Circuit has identified a "30-day delay to be at the boundary line between what is acceptable and what is not" and has "declined to allow plea withdrawal when intervening time periods were as brief as one month." *United States v. Benton*, 639 F.3d 723, 727 (6th Cir. 2011) (citation and internal quotation marks omitted). The Sixth Circuit has heavily weighed delays against defendants that were substantially shorter than the 115 days at issue here. *See, e.g.*, *United States v. Valdez*, 362 F.3d 903, 912 (6th Cir. 2004) ("unjustified 75-day delay, alone, supported the court's denial of a motion to withdraw"); *United States v. Durham*, 178 F.3d 796, 798-99 (6th Cir. 1999) ( holding that "[t]he strongest factor" supporting denial was the defendant "waited approximately seventy-seven days to file his motion"); *United States v. Smith,* 46 F. App'x 247, 249 (6th Cir. 2002) (unpublished) (finding 113-day delay "excessive").

The defendant cites two cases (Mot. 6) in which district courts granted requests for

11

withdrawal despite delays of four and eight months between a plea and the filing of the motion. Both cases are readily distinguishable from the defendant's circumstances.

First, in *United States v. Maxwell*, a police officer searched the defendant's car, finding guns and narcotics, after claiming to see drugs in plain view through the car's tinted windows. DE 167 at 1-2, No. 3:19-cr-00208 (M.D. Tenn.) (filed Apr. 8, 2022). After the defendant's motion to suppress the evidence was denied, the defendant pleaded guilty to narcotics and firearms offenses. *Id.* Eight months later, the defendant filed a motion to withdraw his guilty pleas based on newly discovered evidence that showed the tint of the vehicle's windows was so dark that it would have been impossible for an officer to see through it, and newly discovered evidence of disciplinary action against the testifying officer that further called his credibility into question. *Id.* at 4-5. The district court permitted the defendant to withdraw his pleas and ordered a new suppression hearing because "the defendant's explanation for the delay and the availability of new evidence together weigh[ed] strongly in favor of granting the motion." *Id.* at 8.

In *United States v. Hall*, the defendant pleaded guilty to illegal possession of a firearm by a convicted felon. DE 46 at 4, 1:15-cr-00055 (N.D. Iowa) (filed Mar. 24, 2016). During the district court's Rule 11 colloquy, the court mistakenly failed to advise the defendant that, under the Armed Career Criminal Act ("ACCA"), his conviction might result in a mandatory minimum sentence of 15 years of imprisonment and a potential maximum of life depending on his criminal history, and instead incorrectly advised him that the maximum possible term was ten years. *Id.* at 5-8. Four months after the defendant's guilty plea, and a month after the defendant's PSR identified earlier felony convictions that would trigger the 15-year mandatory minimum at sentencing, the defendant moved to withdraw his plea. *Id.* at 7-8. The district court ruled that the earlier Rule 11 violation

12

created a fair and just reason for withdrawal and that the four-month delay was excusable because the severity of the error did not become apparent until the PSR identified the defendant's previous ACCA-eligible convictions. *Id.* at 13-16.

Neither of these cases support the defendant's request that this Court permit him to withdraw his pleas now. Unlike the defendant in *Maxwell*, Kelsey's request to withdraw his plea is not based on newly discovered evidence that directly bears on the validity of his convictions. Rather, as described below, the defendant asserts "legal innocence" based on misrepresentations of his convictions and the evidence supporting them and by relying on irrelevant legal arguments that were available to the defendant long before he decided to plead guilty. *Hall* is equally inapposite because Kelsey does not allege any error with respect to his Rule 11 colloquy or his advisement of the maximum possible terms of imprisonment he faces.

For these reasons, the first *Bashara* factor weighs heavily against the defendant.

**B.    The longstanding illness of defendant's father is not a valid reason for the defendant's failure to move for withdrawal earlier.**

The defendant claims he "has a valid reason for not moving to withdraw his plea sooner: he moved to withdraw the plea as early as practicable after his father's death." Mot. 14. Although the defendant's father's long illness warrants sympathy, it is not a valid reason for failing to move for withdrawal earlier. As described above, dating back to summer 2021, Messrs. Howard and Warrington repeatedly raised the specter of marshaling specific legal and constitutional challenges to any Indictment that included the offenses referenced in the government's May 2021 target letter and August 2021 reverse proffer. During the October 2022 negotiations, Mr. Rivera specifically requested a carveout to the plea agreement that would permit the defendant to raise those arguments on appeal even after he entered his plea. The defendant ultimately accepted the

13

government's rejection of that request as a condition of his plea agreement.

These exchanges show that the arguments contained in the defendant's motion are not newly developed and that he had an opportunity to raise them before he pleaded guilty. The authority the defendant cites (Mot. 7-10) existed for years before the defendant entered his plea and, in any event, is irrelevant to the two counts to which he pleaded guilty, as further described below. *Cf. United States v. Triplett*, 828 F.2d 1195, 1197-98 (6th Cir. 1987) (rejecting defendant's claim that a newly developed defense supported his withdrawal because the "defense was available to him the day he entered his plea and [defendant] does not set forth an adequate reason for failing to assert this defense at an earlier time"). As the Sixth Circuit has explained, Rule 11(d)(2)(B) does not "allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *Ellis*, 470 F.3d at 280-81. That is exactly what the defendant is attempting to do here. The defendant does not present a valid reason for his 115-day delay, and therefore the second *Bashara* factor weighs against him.

**C.      The defendant has not consistently maintained innocence; he raises irrelevant legal arguments that plainly misrepresent the nature of his convictions.**

The defendant states that "[b]efore entering into this plea agreement, [he] consistently maintained his innocence." Mot. 11. He cites his own public statements about this case and presentations his attorneys made to the government. Mot. 11-13. These actions do not support withdrawal under the third *Bashara* factor.

The defendant stood before this Court and, under oath, pleaded guilty to two felony offenses after repeatedly swearing that the facts contained in his plea agreement were true and supported his convictions. The defendant does not directly dispute any of those facts in his motion. Instead, as addressed below, he misrepresents the nature of his convictions and raises irrelevant

14

legal arguments while claiming that he now "maintains his legal innocence." Mot. 7. The Sixth Circuit has consistently held that, where a defendant has pleaded guilty and presented technical challenges to his Indictment, but otherwise does not maintain his factual innocence, his "assertions fall well short of 'vigorous and repeated protestations of innocence' [that Sixth Circuit] caselaw requires to support a motion to withdraw a guilty plea." *United States v. Watkins*, 815 F. App'x 22, 25 (6th Cir. 2020) (unpublished) (quoting *Baez*, 87 F.3d at 809).

Although not strictly related to the third *Bashara* factor, the defendant also repeatedly claims that that he should be permitted to withdraw his pleas because he "pleaded guilty to offenses that are not actually crimes." Mot. 7; *see id.* at 3-4, 6, 10-13. His arguments are based on misrepresentations of Counts 1 and 5 and the undisputed facts he admitted in his plea agreement.

With respect to Count 5, the defendant incorrectly claims that the "government's theory" was that he "'coordinated' communications allegedly paid for by his state committee to benefit his federal campaign." *Id.* at 7. Likewise, the defendant's motion to dismiss incorrectly states that "Count Five assert[ed] that Kelsey 'made' 'excessive contributions' from 'Political Organization 1 *[his state committee]* to Federal Committee 1' [his federal congressional campaign] and accepted those contributions by 'coordinating' certain communications paid for by his state campaign committee." DE 93-1 at 4 (emphasis added). That is incorrect.

"Political Organization 1" was not the defendant's State campaign committee. The Indictment and plea agreement clearly identified the defendant's State campaign committee as "State Committee 1." DE 1 at 1; DE 73 at 5. They separately described Political Organization 1 as "a nonprofit corporation" that "registered with the [FEC] as a person or organization making independent expenditures." DE 1 at 2; *see* DE 73 at 5. Political Organization 1 "hosted an annual

15

political conference, published ratings on Members of Congress and State politicians, and issued political endorsements." *Id.* The Indictment and plea agreement also identified several Political Organization 1 officers, including Individual 1, its Director of Government Affairs and the defendant's future wife. DE 1 at 2; DE 73 at 6.

Likewise, contrary to the defendant's claim, Count 5 did not charge the defendant with coordinating with his "own state campaign committee," Mot. 7. Rather, Count 5 charged the defendant with illegally "accepting and receiving contributions *made by Political Organization 1 to Federal Committee 1* in the form of [$25,000 and more of] coordinated expenditures *by Political Organization 1* for advertisements supporting KELSEY'S election." DE 1 at 12 (emphasis added). The defendant's plea agreement identified $80,000 worth of expenditures on radio and digital advertisements that Political Organization 1 made to support the defendant's primary election. DE 73 at 8-9. The agreement stipulated that the defendant willfully and illegally coordinated those expenditures with Political Organization 1 through his agents and caused Political Organization 1 to file false reports with the FEC on three separate occasions. *Id.*

The defendant's legal argument supporting his supposed "innocence" is not supported by the actual record. He argues that "federal candidates cannot [illegally] coordinate with their state committees as a matter of law." Mot. 9. Again, that argument is irrelevant to the defendant's conviction under Count 5, which charged him with secretly and illegally coordinating $80,000 of expenditures with a *nonprofit corporation* that spent the money on advertisements to support the defendant's campaign, not with his State campaign committee.

Courts have repeatedly and consistently affirmed the validity of the illegal coordinated contributions offense contained in Count 5. For the 2016 federal election cycle, the Election Act

("FECA") provided that "no person shall make contributions . . . to any candidate and his authorized political committees with respect to any election for Federal office which, in the aggregate, exceed [$2,700]." 52 U.S.C. § 30116(a)(1)(A). FECA also provides that "[n]o candidate or political committee shall knowingly accept any contribution . . . in violation of the provisions of this section." 52 U.S.C. 30116(f). "Contribution" is defined as "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." 52 U.S.C. § 30101(8)(A).

"[C]ampaign-finance law treats as 'contributions' not only direct donations to a political candidate, but also most expenditures 'made by any person in cooperation, consultation, or concert, with, or at the request or suggestion of' that candidate," his committee, or agents thereof. *Campaign Legal Center v. FEC*, 507 F. Supp. 3d 79, 81 (D.D.C 2020), *rev'd on other grounds*, 31 F.4th 781 (D.C. Cir. 2022). "By definition, these so-called 'coordinated expenditures' are in-kind—*viz.*, not actual cash—contributions to the candidate." *Id.* An "expenditure" is defined as "any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made by any person for the purpose of influencing any election for Federal office." 52 U.S.C. § 30101(9)(A). Anyone who makes an excessive contribution in an aggregate amount of $25,000 or more to a candidate, including in the form of coordinated expenditures, commits a felony punishable by up to five years in prison. 52 U.S.C. § 30101(d)(1)(D)(i).

The Supreme Court has repeatedly affirmed these provisions and indicated that the "longstanding" language of the statute itself—"in cooperation, consultation, or concert, with, or at the request or suggestion of"—"'delineates its reach in words of common understanding'" and serves as the touchstone for liability. *McConnell v. FEC*, 540 U.S. 93, 222 (2003) (citation

17

omitted), *overruled on other grounds by Citizens United v. FEC*, 558 U.S. 310 (2010). The Court further explained that "expenditures made after a 'wink or nod' often will be as useful to the candidate as cash. For that reason, Congress has always treated expenditures made 'at the request or suggestion of' a candidate as coordinated." *Id.* at 221 (internal citations and quotation marks omitted); *see also Buckley v. Valeo*, 424 U.S. 1, 46-47 & n.53 (1976) (examining legislative history). In rejecting a vagueness challenge to the coordination language, the Supreme Court held that, "FECA's definition of coordination gives 'fair notice to those to whom it is directed.'" *McConnell*, 540 U.S. at 223 (quoting *American Comm. Assn. v. Douds*, 339 U.S. 382, 412 (1950)).

The defendant's plea agreement makes clear that he was convicted of conduct that falls within the core of what the Supreme Court has stated constitutes illegal coordinated expenditures. The defendant admitted that he arranged the movement of $91,000 to Political Committee 1 and that he, through his agents, then coordinated Political Committee 1's expenditures of that money on radio and digital advertisements, which Political Organization 1 falsely claimed it was making independently to support the defendant's 2016 primary election. DE 73 at 8-9.

The Sixth Circuit recently affirmed comparable convictions where two defendants were found guilty of causing illegal corporate contributions to a U.S. Senate campaign, in violation of 52 U.S.C. § 30118. *See United States v. Lundergan*, 5:18-cr-106 (E.D. Ky.), *aff'd by United States v. Emmons*, 8 F.4th 454, 479 (6th Cir. 2021), *cert. denied* 142 S. Ct. 2676 (2022). In *Emmons*, the Sixth Circuit affirmed the well-established legal proposition that coordinated expenditures constitute contributions to a federal campaign. *See Emmons*, 8 F.4th at 464, 471-73. The Fifth Circuit also recently affirmed convictions in a case in which a former U.S. Congressman was convicted of making excessive contributions to his own campaign by coordinating expenditures

18

with a purportedly independent organization that was supporting the Congressman's campaign. *United States v. Stockman*, 4:17-cr-116 (S.D. Tex.), *aff'd* 947 F.3d 253, 260-62 & nn.5, 7 (5th Cir. 2020), *cert. denied* 141 S. Ct. 369 (2020). These decisions further underscore the soundness of the defendant's Count 5 conviction.

The defendant cites several FEC advisory opinions, issued a decade or more ago, that suggest "a federal candidate cannot 'coordinate' with his or her own state campaign committee for purposes of Federal campaign finance law." Mot. 7-10. Again, the sworn facts underlying Kelsey's Count 5 conviction do not implicate these opinions because Kelsey coordinated *with Political Organization 1* on expenditures *that Political Organization 1 made* to benefit the defendant's federal campaign. There are no allegations in the Indictment or plea agreement that the defendant coordinated expenditures with his State campaign committee. The fact that some of the money that Political Organization 1 spent can be traced back to the defendant's State committee accounts is irrelevant for purposes of Count 5. In any event, some of the money that Kelsey caused to be transferred to Political Organization 1 did not come from the defendant's State committee. Rather, Kelsey caused Political Organization 2, another nonprofit corporation, to transfer $25,000 to Political Organization 1—funds that Political Organization 1 used to support its pro-Kelsey expenditures. DE 73 at 8. That amount would be sufficient in and of itself to support the defendant's felony conviction. 52 U.S.C. § 30101(d)(1)(D)(i).

The defendant's challenge to his *Klein* conspiracy conviction under Count 1 also fails, most clearly because his motion incorrectly identifies the type of conspiracy to which he pleaded guilty. The defendant claims that "Count One fails because there can be no conspiracy if there is no underlying crime." Mot. 10; *see* DE 93-1 at 18 ("a person cannot conspire to commit a crime

19

against the United States which the facts reveal there could be no violation of the statute under which the conspiracy is charged" (citation and internal quotation marks omitted)). However, the defendant was not charged in Count 1 with a conspiracy to commit the offense identified in Count 5. Section 371 establishes a felony offense "[i]f two or more persons conspire *either* to commit any offense against the United States, *or to defraud the United States, or any agency thereof in any manner or for any purpose*." 18 U.S.C. § 371 (emphasis added). Thus, there are two ways to prove a violation of § 371: (1) the "offense" prong; and (2) the "defraud" prong, also known as a *Klein* conspiracy.

As the Indictment and plea agreement show, the defendant pleaded guilty to a *Klein* conspiracy, which does not turn on the validity of his conviction under Count 5. Count 1 clearly charged the defendant with a conspiracy "to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the law functions of the Federal Election Commission in the administration and enforcement of the Election Act." DE 1 at 5. The plea agreement detailed multiple layers of false statements and obstruction that the defendant and others conspired to impose upon the FEC with the goal of supporting the defendant's 2016 congressional campaign. DE 73 at 4-9. As the Court found during the defendant's change of plea hearing, those facts were more than sufficient to support the defendant's conviction under Count 1. The validity of Count 1 is independent of the validity of Count 5, and, in any event, Count 5 remains fully valid.

The defendant's claims that he is legally innocent of the counts to which he pleaded guilty are meritless. Therefore, the third *Bashara* factor weighs against him.

### D. The defendant pleaded guilty after years of plea negotiations and after this Court conducted a rigorous Rule 11 colloquy.

The defendant states that he "entered into this plea agreement hastily and with an unsure

heart due in large part to the stress of simultaneously dealing with a terminally ill father, newborn twins, and a three-year-old daughter." Mot. 13. The Sixth Circuit has rejected arguments based on more extreme personal circumstances, crediting instead statements like those Kelsey made during his Rule 11 colloquy that his plea was voluntary, intelligent, and not taken under duress.

In *Watkins*, the Sixth Circuit rejected a defendant's claim that "the stresses associated with being in solitary confinement while awaiting trial 'force[d him] to take a plea [he] did not want to take'" because "his statements to the district court [during the Rule 11 colloquy] reflect the opposite." 815 F. App'x at 25. The court of appeals stated that "[a]bsent extraordinary circumstances, when the Rule 11 procedures are 'fully adequate,' we hold a defendant pleading guilty to the statements he makes at his plea hearing." *Id.* (citing *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). Kelsey does not allege any defect in his Rule 11 procedures, during which he affirmed there was nothing and no one unduly influencing or pressuring him to plead guilty. Tr. 15-16. The defendant confirmed that, after consulting with his attorneys, he "made the final decision to enter a plea on these two counts" because he "came to the firm and definite opinion that the best thing for Brian Kelsey was to enter a plea." *Id.* at 16-17. There is no reason for this Court to set aside the defendant's sworn statements, much less an extraordinary circumstance.

The defendant also falsely claims that he "was given less than 48 hours to make a decision on his plea agreement." Mot. 13. The record clearly shows that the defendant decided to plead guilty to Counts 1 and 5 of the Indictment after his personal participation in intricate plea negotiations that spanned years and while he was represented by experienced criminal defense counsel, including two former U.S. Attorneys from this District. *See* pp. 2-6, *supra*. Even if this Court were to only consider the portion of negotiations immediately preceding the defendant's

21

plea, the record shows that those negotiations commenced on October 20, 2022, and did not conclude until a month later, on November 18. Even then, during the plea hearing, this Court presented the defendant with multiple opportunities to withdraw from the plea process and proceed to trial. *See* pp. 6-8, *supra*. The defendant repeatedly declined. In any event, when a court makes "every effort to guarantee that [a defendant] adequately considered his options and that he entered into the plea bargaining agreement voluntarily and knowingly," a defendant may not later claim the time was insufficient. *Triplett*, 828 F.2d at 1197; *see United States v. Pluta*, 144 F.3d 968, 974 (6th Cir. 1998) (rejecting defendant's "excuse of not having enough time to go over the plea agreement" considering the defendant, "his attorney, and the government engaged in substantial discussions concerning the structure of a possible plea agreement" that "continued over a period of nearly a year and a half"). The same applies here.

For these reasons, the fourth *Bashara* factor weighs against the defendant.

### E. The defendant is highly sophisticated.

The defendant does not specifically address the fifth *Bashara* factor evaluating his nature and background, instead focusing entirely on a separate factor that considers the defendant's prior experience with the criminal justice system. The defendant cannot dispute that, as a college and law school graduate, constitutional attorney, and former legislator, he is among the most sophisticated class of defendants that could appear before this Court. *See Ellis*, 470 F.3d at 285 (finding this factor weighed against defendant because he was "highly educated and sophisticated" and "understood what he was doing when he entered the guilty plea").

Under this factor, courts consider whether there is anything in a defendant's "nature and background that would prevent him from understanding to what he was pleading." *United States*

22

*v. Martin*, 668 F.3d 787, 796-97 (6th Cir. 2012). Courts routinely deny requests for withdrawal from defendants with high school educations based on findings, for example, that the defendant was "a very capable reader and writer" and appeared to be "lucid, competent, and attentive." *Watkins*, 815 F. App'x at 26. By comparison, there is no indication that the defendant did not understand his plea. Therefore, the fifth *Bashara* factor weighs against him.

### F. As an attorney and former State legislator, the defendant has substantial experience with criminal law and the criminal justice system.

The defendant states that his "inexperience with the criminal justice system contributed to the plea agreement." Mot. 15. That claim is meritless.

The defendant was an attorney and a member of the Tennessee General Assembly for 18 years. During that time, he sponsored or co-sponsored hundreds of pieces of legislation, including bills that specifically addressed criminal process and collateral consequences for criminal convictions. *See* Ex. A. He became chairman of the Senate Judiciary Committee in 2013, through which many bills and rules related to the criminal justice system passed. *Id.* The defendant's experience as a lawyer and legislator "clearly indicates that [he] was not a naive stranger to the criminal proceedings in which he was involved." *Pluta*, 144 F.3d at 974.

The defendant complains that he "did not adequately consider the ancillary consequences of his plea," including a private bank's alleged decision to cancel his credit card and a potential loss of his Tennessee government pension. Mot. 15-17. These consequences of the defendant's plea—allegedly imposed by private and non-federal government actors—do not implicate the validity of the defendant's plea or the Rule 11 process. A district court is not required "to anticipate and negate defendants' beliefs about the sentence." *United States v. Carson*, 32 F.4th 615, 623 (6th Cir. 2022). Instead, Rule 11 requires that "defendants be held to their plea agreements so long

as the court 'scrupulously follow[s] the required procedure.'" *Id.* (quoting *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999)). Here, this Court "conducted a proper, clear, and thorough plea colloquy" that met all the requirements set forth in Rule 11. *Id.* (citation and internal quotation marks omitted). The defendant does not allege otherwise. Therefore, the defendant's complaints that he did not consider every possible extra-judicial consequence that might stem from his plea do not support his motion to withdraw.

For these reasons, the sixth *Bashara* factor weighs against the defendant.

### G. After more than a year of trial delays caused by the defendant, the government's case would be prejudiced if the pleas were withdrawn.

The government does not need to establish prejudice, nor does the Court need to consider it, "unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal." *United States v. Spencer*, 836 F.2d 236, 240 (6th Cir. 1987). For the reasons described above, the defendant has failed to advance any fair and just reason for allowing withdrawal, and therefore the Court need not consider this factor. Nonetheless, the defendant's delay tactics have prejudiced the government's case. Following arraignment, the defendant requested a year-long continuance of the original trial date. Trial was then scheduled to commence in January 2023 before the defendant's November 2022 plea resulted in its cancellation. Three more months have passed beyond that date, with further proceedings suspended indefinitely until the resolution of the defendant's instant motion.

As the Indictment states, the conduct relevant to this case spanned in or around February 2016 through in or around October 2016. DE 1 at 5. The scheme included an intricate series of interactions between the defendant and other coconspirators to move money to Political Organization 1. *Id.* at 9. Then, it included another intricate series of interactions whereby the

24

defendant and his agents coordinated Political Organization 1's expenditures for the benefit of the defendant's campaign. *Id.* Much of the evidence and testimony at trial would rely on witnesses' memories of specific, detailed events that occurred seven years ago. The Sixth Circuit has held that comparable circumstances support a finding of prejudice to the government. *See Watkins*, 815 F. App'x at 26 (weighing this factor against the defendant because "memories fade" and "[t]here is an extremely high risk that necessary witnesses may no longer be available now that [four] years have passed since the criminal activities occurred").

For these reasons, none of the *Bashara* factors support the defendant. His motion to withdraw his guilty pleas should be denied.

## II.     The Defendant's Request to File a Motion to Dismiss the Indictment Is Moot.

The defendant asks the Court's permission to file a motion to dismiss all five counts in the Indictment. Mot. 3; *see* DE 93-1 (proposed motion). The defendant's request is predicated upon the Court first granting his motion to withdraw his pleas. Mot. 3, 18. For the reasons set forth in Part I, *supra*, the Court should deny the defendant's motion to withdraw. As a result, the Court should also deny his request for permission to file a motion to dismiss as moot.[2]

## CONCLUSION

The defendant's motion to withdraw his guilty pleas and motion for leave to file a motion to dismiss should be denied.

---

[2] In the alternative, if the Court were to grant the defendant's motion to withdraw and permit him to file the motion to dismiss the Indictment, the government would ask the Court for leave to file a response to the defendant's motion to dismiss.

25

Respectfully submitted,

HENRY C. LEVENTIS                          COREY R. AMUNDSON
United States Attorney                      Chief
Middle District of Tennessee                Public Integrity Section

By:                                         By:

/s/ Amanda J. Klopf                         /s/ John P. Taddei
AMANDA J. KLOPF                             JOHN P. TADDEI
Assistant U.S. Attorney                     Trial Attorney
110 Ninth Avenue South, Suite A-961         1301 New York Ave. NW
Nashville, TN 37203                         Washington, DC 20530
(615) 736-5151                              (202) 514-3885
Email: amanda.klopf@usdoj.gov               Email: john.taddei@usdoj.gov

REAGAN FONDREN
Attorney for the United States, Acting
under Authority
Conferred by 28 U.S.C. § 515
Western District of Tennessee

By:

/s/ David Pritchard
DAVID PRITCHARD
Assistant U.S. Attorney
Western District of Tennessee
167 North Main Street, Suite 800
Memphis, TN 38103
(901) 544-4231
Email: david.pritchard2@usdoj.gov

26

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a true and correct copy of the foregoing response was electronically filed with the Clerk on April 14, 2023, and service was made upon all persons registered in that case via CM/ECF and/or by email.

/s/ Amanda J. Klopf
AMANDA J. KLOPF
Trial Attorney
