# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:21-cr-00264 |
| | ) | |
| BRIAN KELSEY | ) | |

## MEMORANDUM OPINION AND ORDER

On November 22, 2022. Brian Kelsey pled guilty to Counts One and Five of an Indictment charging him, respectively, with conspiring to defraud the United States in violation of 18 U.S.C. § 371 and with aiding and abetting the acceptance of excessive campaign contribution in violation of 52 U.S.C. §§ 30116(a)(1)(A), 30116(a)(7)(B)(i), 30116(f), 30109(d)(1)(A)(i) and 18 U.S.C. § 2. Four months later and eleven days before his scheduled sentencing, Kelsey sought to withdraw his plea on the grounds that (1) he "pled guilty to a crime which was legally impossible for him to commit"; (2) he "entered into the plea agreement hastily and with an unsure heart due in large part to the stress of simultaneously dealing with a terminally ill father, newborn twins, and a three-year-old daughter"; (3) and his "inexperience with the criminal justice system contributed to the plea agreement." (Doc. No. 93 at 2).

After a lengthy evidentiary hearing on May 16, 2023, during which he and his then-lawyer testified, Kelsey's Motion to Withdraw Plea and File Motion to Dismiss (Doc. No. 93) was denied. The Court found that the requirements of Rule 11 of the Federal Rules of Criminal Procedure were fully complied with during the plea colloquy and that Kelsey knowingly and voluntarily entered his plea. The Court also found Kelsey's testimony incredible and simply did not (and does not) believe that a Georgetown-educated lawyer and former State Senator, who served in the Tennessee General Assembly for almost 20 years and chaired the Senate Judiciary Committee, did not understand the

solemnity and gravity of entering a guilty plea and the loss of rights that act entailed.

Kelsey was sentenced to a concurrent sentence of 21 months on both Counts One and Five. He is scheduled to report to the Bureau of Prisons to commence his sentence on October 10, 2023, but has filed a Motion for Release Pending Appeal. (Doc. No. 165). The Government opposes that Motion (Doc. No. 169).

## I.

When a defendant is found guilty of a federal offense and sentenced to a term of imprisonment, there is a statutory presumption that the defendant should begin serving that sentence, notwithstanding the filing of a notice of appeal. United States v. Vance, 851 F.2d 166, 168 (6th Cir. 1988). That presumption can be rebutted, however.

The governing statute provides:

> (b) **Release or detention pending appeal by the defendant.** – (1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds –
> > (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> > (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
> > > (i) reversal,
> > > (ii) an order for a new trial,
> > > (iii) a sentence that does not include a term of imprisonment, or
> > > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. 3143(b). Hence, there are essentially two factors that must be considered: (1) dangerousness and the risk of flight; and (2) whether the appeal raises a substantial question that

could result in a reversal or otherwise benefit defendant. "If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c)[.]" Id.

**A.**

Turning to the first factor, the Government's raises in a footnote what can only be viewed as a makeweight argument. It writes:

> In his motion, the defendant does not present any evidence or argument regarding this factor, despite the statutory burden placed on him and the requirement that the Court address this factor. The government is not aware of any evidence that the defendant poses a danger to the community. However, with respect to risk of flight, the defendant has repeatedly engaged in delay tactics and attempted to avoid the imposition of judgment and a sentence in this case. The government acknowledges that the defendant has not attempted flight since being indicted. However, the Court's imposition of a 21-month term of imprisonment gives the government pause as to whether there is "clear and convincing evidence" that the defendant does not now pose a flight risk.

(Doc. No. 169 at 11 n.1).

The statute speaks in terms of the Court *finding* by clear and convincing evidence, not Defendant *proving* by clear and convincing evidence. Even in the absence of direct proof (whatever that may be), the Court has no reason to conclude that Kelsey poses a threat to the community. To the contrary, he has been released since he was first arrested on November 1, 2021, has no prior criminal record, and has been compliant with the terms and conditions imposed by the Court while on pretrial release.

Nor does the Court believe that Kelsey presents a risk of flight. Of course, facing any period of incarceration is daunting, but a 21-month sentence is relatively minimal and significantly less than the average defendant receives. Further, the Court finds it far-fetched that Kelsey would decide to

3

Case 3:21-cr-00264    Document 177    Filed 09/26/23    Page 3 of 8 PageID #: 1431

abscond and face significantly more time when he has a wife, a young daughter, and twin sons who recently turned one year old waiting for him at home. Going on the run with a wife and three small children in tow is even less imaginable.

Unlike the Government, the Court has no "pause" and finds by clear and convincing evidence that Kelsey is unlikely to flee or pose a danger or threat to the community were he to be released while his appeal is pending.

**B.**

Next, the Court finds that Kelsey's appeal is not interposed for the purpose of delay and raises a substantial question of law or fact that may inure to his benefit. The basis for Kelsey's appeal is the Government's conduct at sentencing. A bit of background is necessary to place that conduct in context.

In the plea agreement, Kelsey agreed to plead guilty to Counts One and Five in exchange for the Government dismissing the remaining counts and agreeing to certain sentencing recommendations. (Doc. No. 73 at 2, 10-12). The plea agreement also outlined the parties' view of the base offense level and agreed-to application of three enhancements to the offense level: (1) an increase of 6-levels because of the value of the illegal transactions; (2) an increase of 2 levels because Kelsey was organizer or leader of criminal activity; and (3) an increase of 2 levels because Kelsey abused a position of trust. (Id. at 10). The parties also "agree[d] that no additional upward or downward adjustments are appropriate." (Id. ). Finally, they agreed that, "[i]n the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same." (Id. at 11).

4

A Presentence Report ("PSR") was prepared that recommended a 2-level adjustment for obstruction of justice based upon Kelsey's perjurious testimony at the Motion to Withdraw Plea hearing. In response to the PSR, and even though Kelsey's attempt to withdraw the plea were obviously unknown at the time of the plea agreement, the Government chose "not [to] advocate for the Obstruction of Justice enhancement" because "the plea agreement include[d] language that no additional upward or downward adjustments are appropriate." (Doc. No. 167 at 25). Then, in its Sentencing Memorandum, the Government "maintain[ed] that, despite the defendant's subsequent attempt to withdraw his pleas and perjury, this Court should accept the original plea agreement. As a result, per the agreement's terms, the government does not advocate for the application of the obstruction enhancement." (Doc. No. 135 at 3).

Things seemingly changed at the sentencing hearing. There, the Court addressed the obstruction of adjustment enhancement, turning first to Kelsey's counsel for argument. The Court then turned to the Government, and the following exchange occurred:

> THE COURT: All right. Anything you want to say on the objection to the – to the obstruction of justice?
>
> [GOVERNMENT'S COUNSEL]: Yes, Your Honor. As the Court is, of course, aware, that enhancement was not contemplated in the plea agreement between the parties, which, of course, was entered into before Mr. Kelsey moved to withdraw his plea. Therefore, the government defers to the Court on its application.
>
> However, consistent with the terms of the plea agreement, it appears the Probation Office and the Court is inquiring with respect to the propriety of that two-level enhancement.
>
> We would note that in Application Note 4B of Sentencing Guidelines Section 3C1.1, committing, suborning, or attempting to suborn perjury, including during the course of a proceeding, if it's conducted in front of the Court on matters related to the conviction, that that two-level enhancement can apply.

5

Case 3:21-cr-00264   Document 177   Filed 09/26/23   Page 5 of 8 PageID #: 1433

> As, of course, this Court is aware, when Mr. Kelsey testified before this Court at the hearing to withdraw his plea, he repeatedly admitted that he lied at his change of plea hearing when he said he was guilty.
>
> Subsequent to that, while on the stand he also emphatically and repeatedly stated that he did not commit the acts set forth in the factual basis supporting his pleas, despite his earlier sworn statement that he had.
>
> As the Court ruled at the plea withdrawal hearing, the Court can rely on the statement of facts that was entered as true, and, therefore, the defendant's statements, including, but not limited to, "I 100 percent did not commit these things that I'm accused of," on page 119 of the withdrawal transcript, were perjurious and support application of the two-level enhancement.

(Doc. No. 157, Tr. At 11-12). In response to the Court giving Kelsey "the last word on your objection," counsel stated, "I think the government's come pretty close to violating the plea agreement," to which the Court replied, "[w]ell, I asked him what he thought." (Id. at 11).

At this point, a reminder is appropriate. This Court only acts on motions. The only motion before the Court is Kelsey's Motion for Bond Pending Appeal. There is no motion to enforce the plea agreement nor, for that matter, is there a motion to revoke the plea agreement before the Court. This simplifies matters considerably, particularly because both parties agreed at the status conference on September 21, 2023 that the record is closed and is what it is. (Doc. No. 176, Tr. at 9, 12).

"[A]n appeal raises a substantial question when the appeal presents a close question or one that could go either way and that the question is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." United States v. Pollard, 778 F.2d 1177, 1182 (6th Cir. 1985). "Since the district court is familiar with the case, the district court is in an excellent position to determine in the first instance whether the defendant raises a substantial question on appeal." Id.

Clearly, Kelsey has made the minimal showing that the case could go either way on appeal

6

The extensive briefing on the legal issues (of which there are many) only underscores the point. Kelsey raises a substantial question by asserting the Government breached the plea agreement. This, in turn, raises a host of subsidiary questions such as, was the Plea Agreement still valid at the time of sentencing?; did the Government breach that agreement?; assuming the plea agreement was breached by the Government, did Kelsey commit the first breach thereby excusing the Government's breach; assuming the Plea Agreement was in effect, did the Government make an "appropriate argument" within the meaning of the agreement?; and, if so, did Kelsey raise a sufficient contemporaneous objections? While the Court has not been asked to rule and is not ruling on the merits of any of these issues, it finds that Kelsey raises a substantial and close question that is integral to the merits of his convictions. Santobello v. New York, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.").

    Finally, the Court rejects the Government's argument raised at the hearing on September 21, 2023, that, even if Kelsey presents a close question, he is not entitled to bond pending appeal because "the likely result would be that he would be headed to resentencing before a different judge," and hence he cannot show that he would likely obtain a reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process, as required by the statute. (Id. at 14). This argument presupposes that the alleged breach by the Government would result in an order for specific performance (which seems highly unlikely) and ignores that "[i]f the government breaches a plea agreement, a defendant is entitled to relief regardless of whether the district court was ultimately influenced by the breach and regardless of whether the breach was

7

inadvertent." United States v. Ligon, 937 F.3d 714, 718–19 (6th Cir. 2019).

**II.**

Accordingly, Kelsey's "Motion for Bail Pending Appeal" (Doc. No. 165) is **GRANTED**. Pursuant to 18 U.S.C. §§ 3142(b), (c) and 3143(b)(2), Kelsey shall remain under the same terms and conditions imposed by Magistrate Judge Frensley on November 1, 2021 (Doc. No. 13), as modified by him on January 7, 2022 (Doc. No. 35), pending resolution of his appeal by the United States Court of Appeals for the Sixth Circuit, or further Order of this Court.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE