UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Kelly L. Stephens | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: July 08, 2024

Mr. Zachary Carter Lawson
Mr. J. Alex Little
Litson
6339 Charlotte Pike, Unit C321
Nashville, TN 37209

Mr. Ethan A. Sachs
U.S. Department of Justice
Criminal Appellate
950 Pennsylvania Avenue, N.W.
Suite 1264
Washington, DC 20530

      Re: Case Nos. 23-5755/23-5756, *USA v. Brian Kelsey*
         Originating Case No. : 3:21-cr-00264-1

Dear Counsel,

 The Court issued the enclosed opinion today in these cases.

 Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

              Sincerely yours,

              s/Cathryn Lovely
              Opinions Deputy

cc: Ms. Lynda M. Hill

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0292n.06

Nos. 23-5755/5756

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff-Appellee,<br><br>v.<br><br>BRIAN KELSEY,<br>    Defendant-Appellant. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE<br><br>OPINION |

Before: SILER, MOORE, and KETHLEDGE, Circuit Judges.

MOORE, J., delivered the opinion of the court in which SILER, J., joined. KETHLEDGE, J. (pp. 13–15), delivered a separate opinion concurring in the judgment.

**KAREN NELSON MOORE, Circuit Judge.** Brian Kelsey agreed to plead guilty to certain federal crimes in exchange for the government agreeing to recommend only certain sentencing enhancements to the district court. After Kelsey appeared to perjure himself while seeking to withdraw his guilty plea, however, the government suggested during the sentencing hearing that the facts and law supported application of another enhancement. Regardless of whether this conduct constituted a breach of the plea agreement, Kelsey's counsel failed to object to any purported breach. Because Kelsey cannot show plain error, we AFFIRM the district court's judgment.

Nos. 23-5755/5756, *United States v. Kelsey*

# I. BACKGROUND

## A. The Indictment and Plea Agreement

On October 22, 2021, Kelsey was indicted on five counts related to an alleged conspiracy to violate federal campaign-finance laws. *See generally* R.1 (Indictment at 1–12) (Page ID #1–12). Per Kelsey's plea agreement, at a high level, Kelsey, who at the relevant time was a Tennessee state senator running for a seat in the United States House of Representatives, conspired with several individuals to move money from his state senate campaign committee through various political action committees for the benefit of Kelsey's federal campaign committee. *See* R. 73 (Plea Agreement ¶ 7) (Page ID #209–14).

On November 22, 2022, Kelsey and the government entered into a negotiated plea agreement. *Id.* ¶ 3 (Page ID #208). Kelsey agreed to plead guilty to all five counts of the indictment and to give up certain constitutional rights in exchange for certain promises. *Id.* The parties agreed that they would recommend to the sentencing court that Kelsey's base-offense level was eight; that it should be increased by six levels due to the value of the illegal transactions; that it should be increased by two levels because Kelsey was an "organizer, leader, manager, or supervisor"; and that it should be increased by two levels "because the defendant abused a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense." *Id.* ¶ 9(a)(i)–(iv) (Page ID #215). The agreement also contemplates that a reduction of up to three levels would be warranted for acceptance of responsibility. *Id.* ¶ 9(a)(v) (Page ID #215–16). Beyond these adjustments, the agreement states that "the United States and defendant agree to recommend to the Court . . . that no additional upward or downward adjustments are appropriate." *Id.* ¶ 9(a)(vi) (Page ID #215–16).

Nos. 23-5755/5756, *United States v. Kelsey*

Certain other provisions are relevant. The agreement explains that the guidelines range and offense level contemplated by the agreement are not binding on the district court or probation office, and "that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculations, and that the Court determines both the final offense level and the final guidelines range." *Id.* ¶ 9(c) (Page ID #216). That same paragraph also states that "[i]n the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same." *Id.*

Consistent with the agreement, Kelsey pleaded guilty before the district court on November 22, 2022. R. 83 (Plea Tr.) (Page ID #245–67). During the plea colloquy, Kelsey admitted that he engaged in the behavior detailed in the factual basis section of the plea agreement. *Id.* at 9:12–20 (Page ID #253). After the court's explanation of various provisions of the agreement, Kelsey pleaded guilty and the court accepted the plea. *Id.* at 19:14–20:5 (Page ID #263–64).

**B. The Motion to Withdraw the Guilty Plea**

On March 17, 2023, however, Kelsey moved to withdraw his guilty plea. R. 93 (Mot. to Withdraw) (Page ID #285–302). In his motion, Kelsey claimed that he pleaded guilty to conduct that did not constitute a crime—*i.e.*, that he was legally innocent. *Id.* at 6–11 (Page ID #290–95). The district court then held a lengthy hearing on the motion to withdraw. R. 119 (Mot. Hearing Tr.) (Page ID #483–698). Kelsey's position at the hearing appeared broader than his prior assertions of legal innocence. In particular, Kelsey claimed that he did not engage in the conduct described in the factual basis section of his plea agreement, despite admitting at the change-of-

3

Nos. 23-5755/5756, *United States v. Kelsey*

plea hearing that he had. *Id.* at 109:2–25 (Page ID #591); *see also id.* at 113:24–114:1 (Page ID #595–96) ("I'm factually innocent, and I shouldn't have said I was guilty."); *id.* at 123:4–5 (Page ID #605) ("I 100 percent did not commit these things that I'm accused of."). The district court denied the motion. *Id.* at 209:16–19 (Page ID #691).

**C. The Sentencing Hearing**

After the hearing on Kelsey's plea-withdrawal motion but prior to sentencing, the probation office filed a revised presentence report. R. 167 (PSR) (Page ID #1323–53). The revised PSR reflects much of the parties' plea agreement, *see, e.g.*, *id.* ¶ 8 (Page ID #1328), but it also recommends an upward adjustment for obstruction of justice based on Kelsey's statements during his change-of-plea hearing, *id.* ¶ 47 (Page ID #1334). Specifically, the PSR explains that Kelsey "stated, multiple times, that he lied, under oath, at his Change of Plea hearing, when he indicated that he was guilty." *Id.* With this new two-level enhancement applied and no reduction for acceptance of responsibility, Kelsey's total-offense level was twenty. *Id.* ¶¶ 59, 63 (Page ID #1335–36). Kelsey objected to the enhancement. *Id.* at Addendum, Obj. #2 (Page ID #1347–48). The government, on the other hand, stated that it had no objections and that because "the plea agreement includes language that no additional upward or downward adjustments are appropriate . . . the Government will not advocate for the Obstruction of Justice enhancement." *Id.* at Addendum, Gov't Obj. (Page ID #1347).

On August 11, 2023, the district court held the sentencing hearing. R. 157 (Sent'g Tr.) (Page ID #1133–1252). Kelsey's counsel argued against application of the obstruction-of-justice enhancement, contending that Kelsey's statements did not constitute perjury. *See, e.g.*, *id.* at 10:3–24 (Page ID #1142). After Kelsey's initial arguments, the court asked the government "[a]nything

4

Nos. 23-5755/5756, *United States v. Kelsey*

you want to say on the objection to the – to the obstruction of justice?" *Id* at 11:19–20 (Page ID #1143). The government answered yes, and gave the following statement:

> As the Court is, of course, aware, that enhancement was not contemplated in the plea agreement between the parties, which, of course, was entered into before Mr. Kelsey moved to withdraw his plea. Therefore, the government defers to the Court on its application.
>
> However, consistent with the terms of the plea agreement, it appears that the Probation Office and the Court is inquiring with respect to the propriety of that two-level enhancement.
>
> We would note that in Application Note 4B of Sentencing Guidelines Section 3C1.1, committing, suborning, or attempting perjury, including during the course of a proceeding, if it's conducted in front of the Court on matters related to the conviction, that that two-level enhancement can apply.
>
> As, of course, this Court is aware, when Mr. Kelsey testified before this Court at the hearing to withdraw his plea, he repeatedly admitted that he lied at his change of plea hearing when he said he was guilty. Subsequent to that, while on the stand he also emphatically and repeatedly stated that he did not commit the acts set forth in the factual basis supporting his pleas, despite his earlier sworn statement that he had.
>
> As the Court ruled at the plea withdrawal hearing, the Court can rely on the statement of facts that was entered as true, and there, the defendant's statements, including, but not limited to, "I 100 percent did not commit these things that I'm accused of," on page 119 of the withdrawal transcript, were perjurious and support application of the two-level enhancement.

*Id.* at 11:22–13:1 (Page ID #1143–45).

After this exchange, the court asked Kelsey's counsel for the final word on the objection. Defense counsel then stated that "I think the government's come pretty close to violating the plea agreement. It sure sounds like they're advocating for those two points, and they can't do that." *Id.* at 13:5–8 (Page ID #1145). The court noted that the government responded only after it "asked [counsel] what he thought." *Id.* at 13:9 (Page ID #1145). Defense counsel then noted that "if you ask him to violate the plea agreement, it doesn't mean he doesn't violate the plea agreement." *Id.* at 13:10–12 (Page ID #1145). After hearing further from the defense, the district court applied the

5

Nos. 23-5755/5756, *United States v. Kelsey*

enhancement. The court clarified that it could impose the enhancement notwithstanding the plea agreement. *Id.* at 16:6–11 (Page ID #1148); *see also id.* at 16:17–21 (Page ID #1148). The court then calculated Kelsey's total-offense level as twenty—eighteen levels as contemplated by the plea agreement plus the two-level enhancement—and found that the guidelines range was 33 to 41 months. *Id.* at 23:1–5 (Page ID #1155). The court sentenced Kelsey to 21 months' imprisonment. *Id.* at 116:6–9 (Page ID #1248). After imposing its sentence, the court inquired whether defense counsel had any objections, to which counsel replied "[t]he only additional objection is the two points for obstruction." *Id.* at 117:13–17 (Page ID #1249).

## II. DISCUSSION

### A. Standard of Review

Ordinarily, we review de novo the issue of whether a plea agreement was breached. *See, e.g.*, *United States v. Warren*, 8 F.4th 444, 448 (6th Cir. 2021). But if a defendant fails to object adequately to an alleged breach, we must review for plain error. *See, e.g.*, *Puckett v. United States*, 556 U.S. 129, 134–35 (2009). Under plain-error review, the party claiming error must show (1) that there was an error; (2) that was "clear or obvious, rather than subject to reasonable dispute"; (3) that "affected the appellant's substantial rights," *i.e.*, "that it 'affected the outcome of the district court proceedings'"; and (4) that the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 135 (quoting *United States v. Olano*, 507 U.S. 725, 734, 736 (1993)). In the plea-breach context, a defendant may fail to show prejudice if "he obtained the benefits contemplated by the deal anyway (*e.g.*, the sentence that the prosecutor promised to request) or because he likely would not have obtained those benefits in any event." *Id.* at 141–42. And the second prong of the review—clear or obvious error—"will often have

6

Nos. 23-5755/5756, *United States v. Kelsey*

some 'bite' in plea-agreement cases" because "[n]ot all breaches will be clear or obvious" given that plea agreements are creatures of contract. *Id.* at 143.

**B. Plain-Error Review Applies Because Kelsey Failed to Object**

The government argues that Kelsey did not object adequately to the alleged breach of the plea agreement at the sentencing hearing, and that plain-error review thus applies. Kelsey claims that defense counsel's comments following the government's opining on the obstruction-of-justice enhancement were a sufficient objection of breach and adequately apprised the court of the issue. There is no dispute about what defense counsel said, only whether it was a sufficient objection. Counsel stated that "I think the government's come pretty close to violating the plea agreement. It sure sounds like they're advocating for those two points, and they can't do that," R. 157 (Sent'g Tr. at 13:5–8) (Page ID #1145), and also that "if you ask him to violate the plea agreement, it doesn't mean he doesn't violate the plea agreement," *id.* at 13:10–12 (Page ID #1145).

Under Federal Rule of Criminal Procedure 51(b), "[a] party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action that the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." An objecting party need not "use any particular language." *Holguin-Hernandez v. United States*, 589 U.S. 169, 174 (2020). Instead, "[t]he question is simply whether the claimed error was 'brought to the court's attention.'" *Id.* (quoting Fed. R. Crim. P. 52(b)); *see also United States v. Humphrey*, 287 F.3d 422, 445 (6th Cir. 2002) (party preserved *Apprendi* issue because the "substance of his objection to the drug quantity determination, combined with his objection to the standard of evidence to be used, [was] sufficient to notify the district court of the basis for the objection"), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377 (6th Cir.

7

Nos. 23-5755/5756, *United States v. Kelsey*

2002). If an objection "*actually* apprised" the district court of the issue—that is, if the district court recognizes the objection notwithstanding counsel's actions—the issue is sufficiently preserved, as well. *United States v. Prater*, 766 F.3d 501, 507 (6th Cir. 2014).

Kelsey's counsel failed to object adequately to any purported breach in this case. Accordingly, plain-error review applies. To start, Kelsey's counsel appears to concede that he never lodged a formal objection. And though an objection may nonetheless be adequate in the absence of any formulaic presentation or invocation of specific words, counsel's remarks were too abbreviated and sufficiently ambivalent about the government's conduct to register as an objection. *See, e.g.*, *United States v. LeBlanc*, 612 F.2d 1012, 1014 (6th Cir. 1980) ("[C]ourts have held that error is not preserved for appellate review when appellant's objection was too loosely formulated and imprecise to apprise the trial court of the legal grounds for his complaint." (internal quotation marks and citation omitted)). That is, counsel's ostensible objection was not specific and did not inform the district court of the grounds for objecting. *See, e.g.*, *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) ("A party must object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection." (internal quotation marks and citation omitted)). Counsel stated that "the government's *come pretty close* to violating the plea agreement," not that the government had in fact breached the plea agreement. R. 157 (Sent'g Tr. at 13:5–8) (Page ID #1145) (emphasis added).

Although counsel was more specific after the district court responded, counsel still never said that the government breached the agreement, only that the court's asking the government to violate the agreement could still result in a breach. *Id.* at 13:10–12 (Page ID #1145). It goes without saying that if the district court never registered that Kelsey's counsel was in fact claiming

8

Nos. 23-5755/5756, *United States v. Kelsey*

a breach, then the district court would not have realized that counsel was suggesting that the district court prompted the government to violate the agreement by asking the government a question. In this sense, counsel's vague remarks hardly gave the district court the ability to assess the breach issue or to correct any potential improprieties. *See, e.g.*, *Bostic*, 371 F.3d at 871 ("A specific objection provides the district court with an opportunity to address the error in the first instance and allows this court to engage in more meaningful review."). This latter point is particularly acute here: in the context of a brief exchange in which Kelsey's counsel never stated that the government actually breached the agreement, counsel never requested any relief from the district judge and never raised what he thought should happen in light of the government's purported breach. Counsel's lack of follow-up here—specifically, the total failure to prompt the district court to make necessary findings or to request any relief—suggests that counsel himself did not believe that he was lodging an objection.

It is true that counsel did not need to raise the objection in any particular way or use any specific words. Appellant Reply at 19. But with statements as vague and noncommittal as the ones counsel made, the onus falls on Kelsey to show that the district court nonetheless recognized an objection. The district court responded to counsel's initial remark by explaining that it solicited the government's opinion. R. 157 (Sent'g Tr. at 13:9) (Page ID #1145). To the extent that the government's briefing in part mirrors that response—that the government was allowed to give its views at the request of the court—perhaps the district court could be seen as overruling the notion that the government had breached on the basis that the government could respond. Appellant Reply at 21–22. Still, the district court's statement appears nothing more than an off-hand reaction to counsel remarking on the government's conduct before the district court moved on to other

9

Nos. 23-5755/5756, *United States v. Kelsey*

issues. Both counsel's and the district court's terse treatment of the issue—one brief exchange during an otherwise lengthy sentencing hearing—further corroborates that both counsel and the district court did not appear to treat counsel's remarks as an objection. Because Kelsey failed to object and the district court did not treat any remarks as an objection, plain-error review applies.

## C. Kelsey Cannot Show Plain Error

Kelsey never argued in his briefing that he could satisfy plain-error review, but instead contended that plain-error review simply does not apply. At oral argument, counsel conceded that Kelsey would be unable to show plain error should that standard of review apply. Because Kelsey cannot show prejudice and has failed to show a clear or obvious error, we agree that Kelsey fails at multiple steps of the plain-error analysis.

Even if the government breached, Kelsey cannot show prejudice to his substantial rights. At a minimum, Kelsey has not explained to us how he was prejudiced, even if the government failed to perform to his liking. Despite the government's statements at the sentencing hearing, Kelsey received a below-guidelines sentence of 21 months' imprisonment even factoring in the obstruction-of-justice enhancement. Importantly, Kelsey's sentence also falls below the guidelines contemplated by his plea agreement. With a total-offense level of 18 in the absence of the obstruction-of-justice enhancement, Kelsey's guidelines range was 27 to 33 months' imprisonment. Notwithstanding the government's conduct, then, Kelsey received the key benefit of the plea agreement—a sentence not only within the range contemplated by the parties, but *below* it—so it is unclear how any breach prejudiced Kelsey. *See United States v. Keller*, 665 F.3d 711, 715 (6th Cir. 2011) (defendant failed to show prejudice under plain-error review because defendant could not show that "he did not receive the benefits contemplated by the deal, even though he did

not receive them via the performance he expected of the Government" (internal quotation marks omitted)); *see also Puckett*, 556 U.S. at 141–42 ("The defendant whose plea agreement has been broken by the Government will not always be able to show prejudice, either because he obtained the benefits contemplated by the deal anyway (*e.g.*, the sentence that the prosecutor promised to request) or because he likely would not have obtained those benefits in any event.").

Of course, there may be circumstances when a defendant could show prejudice notwithstanding a sentence below an agreement's contemplated guidelines, if, for example, they could show that they would have nonetheless received an even lower sentence. But under plain-error review, making that showing falls to Kelsey. *See Keller*, 665 F.3d at 715 ("[I]t is [the defendant's] burden to show that the court *was swayed* by the breach."). By the same token, under *Puckett* Kelsey needed to show that the district court would not have imposed the obstruction-of-justice enhancement regardless of the government's breach. Yet the district court was clearly interested in applying the enhancement in light of Kelsey's perjury. In this sense, Kelsey faces a doubly difficult circumstance under plain-error review: not only did he receive the benefits of the plea agreement, but also he cannot show—or at a minimum, has not attempted to show—that the government's statements during the sentencing hearing motivated imposing the enhancement.

Finally, regardless of our take on the language of the plea agreement, both parties recognize that certain provisions may not so easily coexist. For example, even if the government's conduct was prohibited by paragraph 9(a) of the agreement, the parties devote significant briefing to the issue of whether paragraph 9(c) allowed the government to answer the district court's question in the manner it did. To reject the government's reliance on paragraph 9(c), Kelsey spends thirteen pages of his opening brief explaining why our precedent concerning the government's duty of

Nos. 23-5755/5756, *United States v. Kelsey*

candor does not excuse its purported breach; that the government's response was not an "appropriate argument[]"; that the government's interpretation does not accord with Rule 11(c)(1)(B); that the government's interpretation renders key parts of the agreement illusory and creates unnecessary conflicts; and that the government's position is at odds with its prior interpretations of the same language. Appellant Br. at 23–36. To be clear, ordinarily any potential ambiguity in the plea agreement would be in Kelsey's favor, whether introduced by the agreement's language or by conflict among provisions. *See, e.g.*, *United States v. Fitch*, 282 F.3d 364, 367 (6th Cir. 2002) ("Ambiguities in a plea agreement must be construed against the government."). Under plain-error review, however, Kelsey must prove that the breach was "clear or obvious." *Puckett*, 556 U.S. at 143. As the Court explained, this inquiry "will often have some 'bite' in plea-agreement cases" because "[p]lea agreements are not always models of draftsmanship, so the scope of the Government's commitments will on occasion be open to doubt." *Id.* Both parties appear to recognize that there is at least some uncertainty about the government's obligations under Kelsey's agreement, even if Kelsey has the better reading of the agreement. Under plain-error review, that uncertainty means that any possible breach was not so clear or obvious that the district court should have taken action in the absence of an objection.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

Nos. 23-5755/5756, *United States v. Kelsey*

**KETHLEDGE, Circuit Judge, concurring in the judgment.** I agree with the panel that we should affirm the district court's judgment. I write separately to explain why Kelsey preserved his objection and why the government did not breach its obligations under the plea agreement.

A criminal defendant preserves a claimed error by "informing the court" of either the action he "wishes the court to take" or his "objection to the court's action and the grounds for that objection." Fed. R. Crim. P. 51(b). An objecting party need not make a "formal 'exception[]'" or use any "particular language." *Holguin-Hernandez v. United States*, 589 U.S. 169, 174 (2020). To preserve an objection, rather, the defendant need only bring it "to the court's attention." *Id.* Here, Kelsey brought to the court's attention both his objection—that the government "violated the plea agreement"—and the grounds for that objection—that "it sure sounds like they're advocating for those two points, and they can't do that." And here the district court "clearly understood the basis for this objection and addressed it." *United States v. Prater*, 766 F.3d 501, 507 (6th Cir. 2014) (quotation marks omitted). Once Kelsey objected, the district court replied: "Well, I asked [the government] what he thought." Kelsey thus preserved his claimed error, so we should review the supposed breach de novo.

We interpret plea agreements using "traditional principles of contract law" and construe ambiguities against the government. *United States v. Warren*, 8 F.4th 444, 448 (6th Cir. 2021). The Agreement's relevant provision stated as follows:

> Defendant is aware that any estimate of the offense level or guidelines range that defendant may have received from defendant's counsel, the United States, or the Probation Office is a prediction, not a promise, and is not binding on the Probation Office or the Court. Defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculations, and that the Court determines both the final offense level and the final guidelines range. Accordingly, the validity of this

13

Nos. 23-5755/5756, *United States v. Kelsey*

>  agreement is not contingent upon the Probation Officer's or the Court's concurrence with the above calculations. In the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same. Defendant further acknowledges that if the Court does not accept the guidelines calculations of the parties, defendant will have no right to withdraw his guilty plea.

Here, the probation office recommended an enhancement under § 3C1.1 for obstruction of justice. Thus, under this provision, the next question is whether the district court "inquir[ed]" about that enhancement. The court did that when—after hearing argument from Kelsey regarding the enhancement—the court asked the government whether it had "anything" it "want[ed] to say on the objection to . . . the obstruction of justice" enhancement. And later in the hearing—after Kelsey complained about the government's response regarding that enhancement—the district court said that "well, I asked him what he thought."

That leaves the question whether the government's response to the court's inquiry was an "appropriate argument[] concerning the same." Kelsey says it was not because the government crossed the line into "advocacy" in favor of the enhancement. But "arguments" are by their nature advocative. *See, e.g.*, *Argue*, The American Heritage Dictionary 98 (3d ed. 1992) (defining "argue" as "1. To put forth reasons for or against; debate" and "2. To attempt to prove by reason; maintain or contend").

The government's response was "appropriate" as well. For one thing, the government's response was truthful and accurate: in this appeal, Kelsey disputes neither that he committed perjury at his plea-withdrawal hearing nor that the obstruction enhancement was applicable. Finally, the government did not even request (expressly at least) that the district court apply the enhancement.

14

Nos. 23-5755/5756, *United States v. Kelsey*

    The government's response was an appropriate argument regarding an enhancement as to which the court had specifically inquired. Indeed, the government could hardly have responded otherwise to the court's inquiry. The argument about which Kelsey now complains was therefore permissible under the plea agreement's plain terms. I would affirm the district court's judgment on that ground.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 23-5755/5756

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

    v.

BRIAN KELSEY,

    Defendant - Appellant.

Before: SILER, MOORE, and KETHLEDGE, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk