# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:21-CR-00264-1 |
| v. | ) | |
| | ) | JUDGE CRENSHAW |
| BRIAN KELSEY | ) | |

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE PENDING DECSION ON § 2255 PETITION

The United States of America, through Robert E. McGuire, Acting United States Attorney for the Middle District of Tennessee, Assistant United States Attorney Kathryn W. Booth, John D. Keller, Acting Chief of the Public Integrity Section of the United States Department of Justice, John P. Taddei, Trial Attorney, Reagan Fondren, Acting United States Attorney for the Western District of Tennessee, and Assistant United States Attorney David Pritchard, files this response in opposition to Defendant/Movant Brian Kelsey's *Emergency Motion for Release Pending Decision on his Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255* (DE 197 ("Mot."); 198 ("Mem.")). In his Motion and the accompanying memorandum, Kelsey requests that the Court stay his term of imprisonment until 30 days after his separately filed § 2255 motion is resolved. Kelsey's Motion is entirely without merit. It should be denied.

## LEGAL AUTHORITY

"In order to receive bail pending a decision on the merits, prisoners must be able to show not only a substantial claim of law based on the facts surrounding the petition but also the existence of 'some circumstance making [the motion for bail] exceptional and deserving of special treatment in the interests of justice.'" *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990) (quoting *Aronson v. May*, 85 S. Ct. 3, 5 (1964) (Douglas, J., in chambers, denying application for bail pending habeas

petition)); *see Morgan v. United States*, No. 93–2267, 1994 WL 182141, *1 (6th Cir. May 11, 1994) (affirming denial of motion for bail pending § 2255). "In other words, there must be both 'exceptional circumstances . . . [and] a substantial likelihood of success in the § 2255 motion.'" *Cureton v. United States*, No. 3:03-CR-116, 2016 WL 6106395, at *3 (E.D. Tenn. Oct. 19, 2016) (quoting *Morgan*, 1994 WL 182141, at *2). "There will be few occasions where a prisoner will meet this high standard." *Dotson*, 900 F.2d at 79; *see Emrick v. Wolfe*, No. 2:05-CV-1057, 2007 WL 148921, at *2 (S.D. Ohio Jan. 16, 2007) ("'Habeas petitioners are rarely granted release on bail pending disposition or pending appeal.'" (quoting *Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986)). *United States v. Mers*, No. 1:01-CR-101, 2005 WL 1949539, at *1 (W.D. Mich. Aug. 9, 2005) ("The section 2255 movant, who is incarcerated under a presumptively valid criminal conviction, is on a much weaker footing than a pretrial accused or even a convicted defendant waiting appeal.").

## ARGUMENT

This Court should deny Kelsey's Motion because he fails to demonstrate "exceptional circumstances" entitling him to release. Kelsey claims only that he will succeed on the merits of his § 2255 petition. That claim—which has no merit on even a surface-level reading of Kelsey's Motion and contemporaneously filed § 2255 petition—is legally insufficient to justify release pending the resolution of his habeas petition. The Court should deny Kelsey's Motion on this ground alone, and need not reach the question whether he has demonstrated a substantial claim of law in his § 2255 petition.

In any event, Kelsey's motion also fails because Kelsey has not demonstrated a substantial question of law related to his § 2255 petition, which is required to warrant release at this stage. Instead, Kelsey has alleged numerous fact-bound grounds upon which he believes his conviction

should be reversed, including various layers of ineffective assistance of counsel and claims of prosecutorial misconduct. These are untested allegations of fact, not "substantial claim[s] of law." *Morgan*, 1994 WL 182141, at \*1.

Furthermore, Kelsey's asserted fact-based grounds for habeas relief do not demonstrate a substantial likelihood of success on their face. Most notably, Kelsey fails to demonstrate that the outcome of the proceeding would have been any different, even if the meritless allegations he now lodges were true. Kelsey, a trained lawyer and former legislator, stood before this Court and swore, under oath, that he committed the crimes to which he pleaded guilty. His "[s]olemn declarations in open court carry a strong presumption of verity," and "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Given Kelsey's own sworn admissions, there is little doubt that his conviction and sentence will be upheld after his collateral appeal is complete. This Court should not tolerate his latest attempt—in a longstanding series of attempts—to avoid facing the just punishment that this Court has ordered.

## I. The Motion Fails to Present Exceptional Circumstances Deserving of Special Treatment in the Interests of Justice.

To demonstrate "exceptional circumstances" warranting bail pending a § 2255 petition, a petitioner must present more than just factors to be considered as a basis for granting his petition on the merits. *Dotson*, 900 F.2d at 78–79; *Morgan*, 1994 WL 182141, at \*2. For example, the Sixth Circuit has cited "a case where the district court granted bail allowing the prisoner to go to a private hospital pending review of his habeas petition." *Dotson*, 900 F.2d at 78 (citing *Jago v. U.S. Dist. Ct. for the N.D. Ohio*, 570 F.2d 618, 621–22 (6th Cir. 1978)); *see Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992) ("Very few cases have presented extraordinary circumstances, and those that have seem to be limited to situations involving poor health or the impending

completion of the prisoner's sentence."). "In such situations, bail decisions have nothing to do with a decision on the merits of the petition." *Dotson*, 900 F.2d at 78–79.

Kelsey, however, "presents no arguments that describe 'exceptional circumstances' deserving special treatment during the pendency of his habeas corpus [proceedings]." *Morgan*, 1994 WL 182141, at *2. Instead, he cites as "exceptional circumstances" only his alleged "strong bases for vacating his conviction, in light of other compelling evidence disputing the charges." Mem. at 21; *see id.* at 3–4 (citing as "exceptional circumstances": the ineffective assistance of his counsel during sentencing; alleged newly discovered recordings of witnesses; his view that the government's case "is exceptionally weak"; this Court's application of a Sentencing Guidelines enhancement for obstruction; and the length of his 21-month term of imprisonment); *id.* at 21–25.

As the Sixth Circuit wrote in *Morgan* when affirming the denial of a motion for bail pending disposition of a § 2255 petition, "The grounds that [Kelsey] does present are factors to be considered as a basis for granting or denying a writ of habeas corpus, rather than factors to be considered in a bail decision." *Morgan*, 1994 WL 182141, at *2 (citing *Landano*, 970 F.2d at 1241 (reversing a district court's extension of a defendant's bail pending habeas proceedings because, in part, the petitioner's allegations of "probable innocence . . . arise in the context of granting the writ, not granting bail")); *see United States v. Phillips*, No. 3:23-CR-54, 2024 WL 5089566, at *2 (W.D. Ky. Dec. 12, 2024) (same) (citations omitted). None of Kelsey's allegations constitute "exceptional circumstances" that would support release pending the outcome of his § 2255 petition.

Nor do the other circumstances of his current, extended post-plea release prior to the Supreme Court's denial of his petition for a writ of certiorari warrant extension of his bail at this stage. Kelsey begins his motion by asserting that he is not a flight risk or a danger to the

4

community. Mem. at 1. But as other courts have explained when denying a stay of surrender pending a § 2255 motion, arguments "that [a petitioner] is not a flight risk, that he has strong family ties in [the community] and that his criminal conviction is likely to be vacated, are neither unique nor compelling, and fail to set forth exceptional circumstances sufficient to release him from [a] prison during the pendency of his federal habeas corpus petition." *Villa v. Straub*, No. 502CV128, 2005 WL 1875091, at *1 (W.D. Mich. Aug. 5, 2005); *see also Armengau v. Hildebrand*, No. 22–4049, 2023 WL 6475859, at *4 (6th Cir. June 1, 2023) (defendant's argument about constitutionally invalid sentence and his family circumstances, specifically that he desired to care for granddaughter, were insufficient to establish "exceptional circumstances" warranting release pending resolution of habeas petition); *Borders v. United States*, No. 2:09-CV-616, 2010 WL 1817978, at *1 (S.D. Ohio Apr. 30, 2010) (finding that "the fact that incarceration impedes petitioner's ability to maintain contact with his son is a common, if unfortunate, incident of imprisonment shared by virtually every inmate; that fact alone does not, in this Court's opinion, qualify as an exceptional circumstance that would justify the extraordinary relief sought by petitioner in his motions for release on bond" (footnote omitted)).

Kelsey cites just one case in support of his claim that the circumstances he presents are exceptional. *See* Mem. at 22 (citing *House v. Bell*, 547 U.S. 518 (2006)). It is unclear how this case relates to Kelsey's motion, much less supports it. In *House*, the Supreme Court addressed whether a petitioner who had been convicted of murder following trial in state court 20 years earlier and sentenced to death could overcome procedural default and file a federal habeas claim based on new evidence of actual innocence. 547 U.S. at 521–22. The Court concluded that the petitioner could proceed with his actual innocence claim despite default because, in light of the new evidence, "it is more likely than not that no reasonable juror viewing the record as a whole would lack

5

reasonable doubt." *Id.* at 554. The Court did not address the issue of what showing is required for a defendant who pleaded guilty in federal court to remain out on bond pending a § 2255 petition.

Notably, Kelsey has not raised a legal claim of "actual innocence" in his § 2255 petition. And for good reason: the Sixth Circuit has repeatedly held that freestanding claims of actual innocence are not cognizable in the non-capital habeas context. *See, e.g.*, *Glover v. Warden, London Corr. Inst.*, No. 17–3362, 2017 WL 8792664, at *3 (6th Cir. Oct. 11, 2017) ("Except in death penalty cases, freestanding actual innocence claims are not cognizable in federal habeas proceedings."); *Haynie v. Buchanan*, No. 19-3426, 2019 WL 5790995, at *2 (6th Cir. Sept. 24, 2019) (holding that actual innocence claim was not cognizable in federal habeas proceedings); *Evers v. United States*, No. 17–5419, 2017 WL 8794876, at *2 (6th Cir. Oct. 27, 2017) (same); *Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) (same) (citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993)). Kelsey's extended discussion of alleged deficiencies in the performance of his counsel, recordings that he claims exonerate him, and, particularly, his opinions regarding the overall strength of the government's evidence had this case proceeded to trial are nothing more than attempts to use this Motion as an end-run around the legal prohibition on claiming that he is actually innocent of the crimes to which he pleaded guilty.

Kelsey loosely identifies another circumstance he suggests is exceptional—namely, that unless the Court grants relief, he will have "served a substantial amount of his 21-month sentence before his *habeas corpus* motion is ruled on." Mem. at 4. The Court should give little weight to this argument. If such a scenario were sufficient to form the basis of a motion to stay surrender pending the outcome of a § 2255 petition, *every defendant* sentenced to serve 21 months or less would be entitled to release pending their habeas petition. That absurd result is foreclosed by Sixth Circuit precedent, which clearly delineates the standard for a motion for surrender pending

6

resolution of a habeas petition, without any reference to the amount of time a defendant will serve on his sentence. *See Mers*, 2005 WL 1949539, at *1 (stating that defendant's complaints about length of time it would take to resolve § 2255 motion "does not come close to establishing exceptional circumstances").

The cases that Kelsey cites offer no support for his time-based request for relief. *See* Mem. at 4. In *United States v. Bricker*, DE 26, No. 24–3286 (6th Cir. June 26, 2024) (unpublished mem. order), the district court found that a defendant who had originally been sentenced to 294 months in prison was eligible for a reduction under a newly enacted Sentencing Guidelines statement that reduced his Guidelines range to 70 to 87 months in prison. *Id.* at 1–2. With "less than 23 months remaining of his original 294-month sentence," the district court resentenced him to time served. *Id.* at 3–4. The government appealed, and the Sixth Circuit permitted the defendant release from federal custody pending the appeal because "if we affirm the district court's reduction of [the defendant's] sentence, he will have spent time in custody beyond the length of his sentence." *Id.* at 4. The Sixth Circuit was careful to note that "[the defendant's] release from federal custody will not, in the immediate future, result in his release from custody" because he was set to "be detailed by Ohio on a parole violation" for up to seven years. *Id.* at 4–5.

Likewise, in *Boyer v. City of Orlando*, 402 F.2d 966 (5th Cir. 1968), a defendant who had been denied representation of counsel was incarcerated on a 120-day term of imprisonment following a misdemeanor state conviction. *Id.* at 967. While the defendant was in prison, several intervening circuit and Supreme Court decisions "extend[ed] substantial constitutional rights to misdemeanor cases." *Id.* The court of appeals ordered the defendant released on bail based on the defendant's presentation of "an issue of fundamental justice in such a rapidly developing area,"

7

and the fact that the defendant's "sentence would long have been served before the case could be docketed for determination by a panel of this Court." *Id.* at 968.

Kelsey's legal claims and circumstances are not comparable. His request for release is not based on an established intervening change in law that would drastically reduce his term of imprisonment—of which he has yet to serve a day—or give rise to a newly identified constitutional right. Instead, his request for release is based on fact-bound allegations of ineffective assistance of counsel and prosecutorial misconduct that, as described below, are inadequate to sustain the relief that he seeks: complete reversal of his convictions.

Kelsey's citation of *Spalla v. Foltz*, 762 F.2d 1011 (6th Cir. 1985) (Table), is even more questionable. Mem. at 4. In that case, "[t]he district court considered all documents before it but denied bail because it did not find either the clear grounds for relief on the petition's merits or exceptional circumstances." *Id.* at *1. The Sixth Circuit dismissed the petitioner's appeal of the denial of bail based on a lack of "jurisdiction to review the district court's denial of bail during a post-conviction habe[a]s corpus proceeding." *Id.*

In sum, Kelsey identifies no circumstances that are exceptional and deserving of special treatment in the interests of justice. Rather, it is Kelsey who unjustifiably seeks unprecedented treatment compared to the vast number of individuals who stand convicted of crimes and seek relief pursuant to § 2255, particularly those who, unlike Kelsey, have not pleaded guilty.

## II. The Motion Fails to Show a Substantial Claim of Law Based on the Facts Surrounding the Petition, Particularly in Light of Kelsey's Guilty Plea[1]

In his Motion, Kelsey asserts that he has raised two substantial questions of law that will result in a successful § 2255 petition: (1) that several of his attorneys denied him effective assistance of counsel at various stages of his direct criminal proceedings, almost entirely after he entered his guilty plea; and (2) two alleged instances of prosecutorial misconduct relating to newly discovered, surreptitious recordings that Kelsey and a member of the public made of witnesses who may have testified had the case proceeded to trial. Mem. 7–21. These untested allegations of fact are not "substantial claim[s] of law." *Morgan*, 1994 WL 182141, at *1. Furthermore, Kelsey's claims do not demonstrate a substantial likelihood of success on their face, particularly given Kelsey's own sworn admissions of guilt and detailed factual basis.

### A. Kelsey's Guilty Plea and Sworn Statement of Facts "Constitute a Formidable Barrier" for His § 2255 Petition

Kelsey, a trained lawyer, faces the undisputable fact that he stood before this Court and pleaded guilty to Counts 1 and 5 of the Indictment, which charged Kelsey with conspiring to defraud the United States by obstructing the lawful functions of the FEC, and accepting excessive campaign contributions, respectively. *See* DE 83 (11/22/22 Plea H'g Tr.). Pursuant to that plea, Kelsey entered into a plea agreement with the government, which described Kelsey's unlawful conduct in detail in a factual basis section spanning five pages. DE 73 (plea agreement). In the plea agreement, Kelsey expressly "admit[ted]" that the factual basis was accurate and true, that the

---

[1] Kelsey filed this motion for release and his accompanying § 2255 petition on January 23, 2025. Together, his motions and memoranda in support constitute more than 100 pages of briefing and hundreds of pages of corresponding attachments. *See* DE 197–202. The Court ordered the government to respond to Kelsey's motion for release in seven days, by January 30, 2025. DE 205. Given the timeframe involved and the nature and volume of Kelsey's claims, Part II of this filing likely does not contain an exhaustive accounting of all of the reasons why Kelsey's § 2255 petition should be denied on the merits following full briefing from the government on the petition.

9

conduct it described "establish[ed] his guilt beyond a reasonable doubt," and that he was "in fact guilty" of the charges contained in Counts 1 and 5 of the Indictment. *Id.* At Kelsey's plea hearing, this Court reviewed the plea agreement's factual basis section with Kelsey and asked him whether he had "read each and every word in" it. DE 83 at 9. Kelsey confirmed that he had and agreed that the information in the factual basis section was "true and correct." *Id.* The court further inquired whether Kelsey had "in fact" "engage[d] in the behavior attributed to [him]" "in the factual basis" section, and Kelsey responded yes. *Id.*

When, months later, Kelsey attempted to disclaim these admissions in an effort to withdraw his plea, this Court "found Kelsey's testimony incredible," and expressed disbelief "that a Georgetown educated lawyer and former State Senator, who served in the Tennessee General Assembly for almost 20 years and chaired the Senate Judiciary Committee, did not understand the solemnity and gravity of entering a guilty plea and the loss of rights that act entailed." DE 177 at 1. This Court said that Kelsey's attempt at withdrawal had "not" been "well taken," and that his claims "at least permit[] the suggestion of some kind of . . . gamesmanship." DE 119 at 201, 209.[2]

Kelsey attempts more of the same with respect to the newfound allegations he raises in his § 2255 petition. Regardless, under applicable precedent, Kelsey's original sworn declarations at the time he pleaded guilty completely undermine his claim that his § 2255 petition will be successful. "'Solemn declarations in open court carry a strong presumption of verity,' and a defendant's representations during a change-of-plea hearing 'constitute a formidable barrier in any subsequent collateral proceedings.'" *Manigault v. United States*, No. 23–5985, 2024 WL 4766186,

---

[2] In his Motion, Kelsey attempts to construe this Court's statements during sentencing about his truthfulness to constitute a finding that there was an insufficient factual basis for his guilty plea. Mem. at 11. For the reasons discussed herein, this misrepresents this Court's statements and conclusions. *See* p. 15–16, *infra*.

10

at *2 (6th Cir. June 28, 2024) (quoting *Blackledge*, 431 U.S. at 74); *see* DE 119 at 197 (this Court, quoting *Blackledge* for the same proposition, in its oral order denying Kelsey's motion to withdraw his plea). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citing *Blackledge*, 431 U.S. at 74) (additional citation omitted). "Thus, in the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'patently incredible' and 'patently frivolous or false,'" for purposes of determining whether there is any need for an evidentiary hearing. *Id.* In the absence of such extraordinary circumstances, "the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221–22. "Otherwise, a primary virtue of Rule 11 colloquies would be eliminated—'permit[ting] quick disposition of baseless collateral attacks.'" *Id.* at 222 (quoting *Blackledge*, 431 U.S. at 79 n.19).

In light of this "formidable barrier," there is little question that the claims Kelsey raises in his Motion are insufficient to result in a successful § 2255 petition. Indeed, as explained below, even absent this high hurdle, Kelsey's claims are inadequate and not credible on their face.

## B. Kelsey's Counsel Was Not Ineffective.

Kelsey makes various allegations that several of his lawyers were ineffective before this Court and on direct appeal. Mem. at 7–14. Notably, all of these alleged failures—except the failure to file what this Court has already ruled would have been a frivolous motion to dismiss—occurred after Kelsey pleaded guilty before this Court. Kelsey alleges no ineffectiveness with respect to the entry of his guilty plea or Rule 11 colloquy.

11

A prisoner in custody under a sentence of a federal court may move the court to vacate, set aside, or correct his sentence on certain grounds, including that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). It is well established that "[t]o prevail under § 2255, a defendant must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or jury's verdict," or "must show a fundamental defect in his sentencing which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Wright v. Jones*, 182 F.3d 458, 463 (6th Cir. 1999) (citations and internal quotation marks omitted).

When a petitioner challenges his conviction and sentence on the basis of ineffective assistance of counsel, he bears the burden of showing both deficient performance and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). On the first prong, "the proper standard for attorney performance is that of reasonably effective assistance," and an attorney's performance should not be deemed deficient unless the defendant shows "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. This standard is "highly deferential," and "courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Moreover, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "It will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the identified acts or omissions overcome the presumption that a counsel rendered reasonable professional assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986) (citation and internal quotation marks omitted).

12

On the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In § 2255 proceedings, it is the petitioner's burden to show his entitlement to relief. *See Potter v. United States*, 887 F.3d 785, 787–88 (6th Cir. 2018). This requires him to "set forth facts"; mere "[c]onclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) (citations omitted). Indeed, when a "petitioner's claims are stated in the form of conclusions without any allegations of facts in support thereof, as well as being unsupported by proof or reference to such proof," his motion is "legally insufficient to sustain a review." *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (per curiam); *see also Thomas v. United States*, 849 F.3d 669, 681 (6th Cir. 2017) ("Bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the Government to respond to discovery or to require an evidentiary hearing.").

## 1. Counsel Alex Little was not ineffective during the sentencing hearing and on appeal.

Kelsey asserts that his "most obvious ineffective assistance of counsel" claim is that Alex Little, his lead counsel during his sentencing hearing, "failed to object to the government's breach of the plea agreement." Mem. at 1, 7. Kelsey asserts that the Sixth Circuit "ruled that this failure cost Mr. Kelsey his appeal." *Id.* at 1. That is an inaccurate representation of the Sixth Circuit's decision. The majority of the Sixth Circuit panel held "Kelsey's counsel failed to object to any purported breach," but it pointedly declined to reach the merits of whether the government had, in fact, breached the agreement in the first place. *United States v. Kelsey*, No. 23–5755, 2024 WL

13

3326022, at *1–6 (6th Cir. July 8, 2024). Indeed, no judge has ruled that the government was in breach.

To the contrary, particularly important in the context of Kelsey's ineffective assistance of counsel claim is Judge Kethledge's concurring opinion, which Kelsey does not mention in his instant Motion. Judge Kethledge wrote "separately to explain why Kelsey preserved his objection *and* why the government *did not breach* its obligations under the plea agreement." *Id.* at *7 (Kethledge, J., concurring in judgment) (emphasis added). He found that Little's actions during sentencing "preserved his claimed error," but that the objection was invalid because, even under de novo review, the government's response to this Court's inquiry regarding the Guidelines enhancement at issue was "appropriate" and "permissible under the plea agreement's plain terms." *Id.* As a result, Judge Kethledge "would affirm the district court's judgement on that ground." *Id.* Given a federal circuit judge held that Little had, indeed, objected, and that there nonetheless was no government breach in the first place, it is not possible to find that Little was so deficient that his "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88.

Moreover, Kelsey cannot demonstrate prejudice. The Sixth Circuit had no occasion to reach the government's alternative argument for affirmance that Kelsey breached the plea agreement before the government's purported breach, thereby absolving the government of its responsibility under the plea agreement. *Kelsey*, DE 18 at 57–61 (gov't C.A. Br.), No. 23-5755 (6th Cir.). As set forth in the government's appellate brief, the government had a strong argument that because Kelsey admitted that he lied to the court under oath after he had entered his plea agreement, Kelsey committed criminal conduct in violation of the agreement's plain terms. Having

14

thus breached his plea agreement, Kelsey released the government of the obligation he claimed the government failed to comply with, and his claim of government breach warranted no relief. *Id.*

Nor did the Sixth Circuit address what Kelsey's remedy would have been had the government been found to have been in breach of the plea agreement. As the government also argued on appeal, precedent from the Supreme Court and the Sixth Circuit required that the case be remanded to the district court to allow it to determine, using its independent discretion, whether the breach may be cured by specific performance of the agreement or whether Kelsey should be permitted to withdraw his plea. *Id.* at 54–57. The government had a strong argument that specific performance would be the most equitable result. At minimum, the government substantially performed under the plea agreement despite Kelsey's perjurious post-plea conduct, which is what gave rise to the Court's contemplation of the obstruction enhancement and the alleged government breach in the first place. Rewarding Kelsey's conduct by ordering removal of his convictions would have been a grossly inequitable remedy compared to the alternative of resentencing, where Kelsey would likely have faced the same Guidelines range that he did previously, and a comparable below-Guidelines term of imprisonment. *Id.* at 56–57. Given these considerations, Little's conduct at the sentencing hearing did not result in any prejudice to Kelsey.

Next, Kelsey claims that Little erred with respect to the arguments he pursued on appeal. Mem. at 11–12. Kelsey states that Little should have appealed this Court's denial of Kelsey's motion to withdraw his guilty plea because, during sentencing, this Court "implie[d] that Mr. Kelsey is not guilty of the charges against him." Mem. at 11 (citing DE 157 at 18). This Court did nothing of the sort; it merely ruled that Kelsey's statement while testifying at the withdrawal hearing that he had committed perjury during his plea hearing was sufficient to sustain a two-level enhancement for obstruction of justice under Sentencing Guidelines § 3C1.1. DE 157 at 14–19.

15

The Court reached that conclusion after citing numerous cases that stood for that unremarkable proposition. *See id.* The Court did not call into question its earlier, detailed ruling at the conclusion of the withdrawal hearing that Kelsey's exhaustive Rule 11 colloquy, sworn factual basis, and admissions in open court during the plea hearing were sufficient to sustain his convictions. *See* DE 119 at 194–209. In view of the complete record, it would have been futile for Little to argue on appeal that "Mr. Kelsey's plea lacked a sufficient factual basis." Mem. at 12.

### 2. Counsel Paul Bruno was not ineffective while testifying as a witness at the withdrawal hearing or for failing to file a motion to dismiss that would have been contrary to binding Supreme Court precedent.

Next, Kelsey claims that, during the hearing for his motion to withdraw his plea, counsel Paul Bruno, while testifying as a fact witness, was ineffective. Mem. at 12–14. As a threshold matter, Bruno was testifying as a witness under oath at the time of his alleged ineffectiveness, not presenting arguments or facts on behalf of Kelsey as his counsel. Therefore, Bruno was not engaged in "representation" of Kelsey in this context, and an ineffective assistance claim in inapt as a matter of law. *See United States v. Dillard*, 801 F. App'x 948, 950 (6th Cir. 2020) ("To establish a claim for ineffective assistance of counsel, a defendant must show that: (1) his attorney's *representation* "fell below an objective standard of reasonableness. . . .'") (quoting *Strickland*, 466 U.S. at 687–88) (emphasis added).

Regardless, Kelsey's claim is unmeritorious for additional reasons. Kelsey claims Bruno was ineffective by misrepresenting to the Court the date on which Kelsey requested that counsel move to withdraw his plea. *Id.* at 12–13. Kelsey asserts that he emailed Bruno "asking to withdraw his plea . . . just five days after the change of plea hearing." *Id.* at 13. But that is not what Kelsey's proffered email says. Rather, Kelsey emailed Bruno a question: "Is there anything you can do to withdraw my plea and file the motion to dismiss?" Mem. at 5 (quoting Kelsey Decl.). That is

16

hardly a clear request that counsel immediately file a withdrawal motion. Furthermore, Bruno's testimony during the hearing matched Kelsey's own. Kelsey testified that "the reason I'm harping on the February 13th date, Your Honor, is that was the first time it was ever clear to me that I need to file a motion to withdraw this plea." DE 119 at 45; *see id.* at 117 (Kelsey testifying, "So that's why I referenced the date of February 13th. That's when my head was finally clear and I definitely told my attorneys that we needed to file a motion to withdraw the plea, to undo the—mistake that I made back on November 22."). Kelsey can hardly claim now that Bruno "gave clearly incorrect testimony against him," Mem. at 12, when Bruno's recollection of events matched Kelsey's own.

In any event, Kelsey cannot show prejudice because, as this Court has already ruled, the timing of Kelsey's withdrawal petition was just one of numerous factors that weighed against Kelsey being permitted to withdraw his plea, and was far from the most weighty. *See* DE 119 at 194–209. In particular, the Court noted "Kelsey's contention that he pled guilty to offenses that are not crimes is really suspect," and, "Quite frankly, this argument really weakens his argument to withdraw before the Court." *Id.* at 200–01. In addition, the Court cited, among additional factors that weighed against Kelsey: the exhaustive nature of Kelsey's Rule 11 colloquy and detailed nature of his plea agreement and statement of facts*, id.* at 203–08; the fact that Kelsey made a "solemn declaration and oath" to the Court that he was guilty, *id.* at 205; and the fact that Kelsey "offered his plea as a very highly educated, legally trained, active participation and sophisticated legal party to the Court," *id.* at 208. The Court denied Kelsey's motion based on "all" of the factors under consideration and indicated it was not a close call, adding that the motion was "not well taken." *Id.* at 209.

17

Kelsey also claims that Bruno was ineffective for failing to file a draft motion to dismiss the charges based on the possibility that the Supreme Court might "enjoin the prohibition on campaign coordination to which Kelsey pleaded guilty." Mem. at 14. This Court has already rejected an equivalent argument Kelsey made during his motion to withdraw, when he appended the motion to dismiss at issue. *See* DE 93-1. The Court observed that "the legal authority that Mr. Kelsey relies upon for the dismissal motion and his motion to withdraw the guilty plea is not new law, but indeed was law that was in existence and apparently in existence long before the November 22nd plea hearing, when he pled guilty to Counts One and Five." DE 119 at 200.

Moreover, as the government has noted in previous filings, the Supreme Court has repeatedly and consistently affirmed the validity of the illegal coordinated contributions offense contained in Count 5. *See* DE 98 at 16–19 (citing *McConnell v. FEC*, 540 U.S. 93, 222–23 (2003)). At the time of the withdrawal hearing, the Sixth Circuit had likewise recently affirmed comparable convictions where two defendants were found guilty of causing illegal corporate contributions to a U.S. Senate campaign, in violation of 52 U.S.C. § 30118. *See United States v. Lundergan*, 5:18-cr-106 (E.D. Ky.), *aff'd by United States v. Emmons*, 8 F.4th 454, 479 (6th Cir. 2021), *cert. denied* 142 S. Ct. 2676 (2022).

Kelsey's contention that, in the face of all this binding authority, Bruno should have nonetheless filed the motion to dismiss is based solely on a 2024 decision in which the Sixth Circuit *rejected* a constitutional challenge to "the validity of the current limits on political parties' coordinated expenditures." *Nat'l Repub. Sen. Comm. v. FEC*, 117 F.4th 389, 391 (6th Cir. 2024) (en banc). Kelsey's case does not involve "political parties' coordinated expenditures." It involves coordination between a federal congressional candidate and a political action committee spending money in support of the candidate's campaign. Regardless of this material distinction, this Sixth

18

Circuit decision, issued less than five months ago, *affirms* the constitutionality of the campaign finance statute that was challenged. Thus, it cannot serve as a basis for an ineffective assistance claim. The mere possibility that the Supreme Court might reverse its own precedent at some point in the future is not a sufficient basis to allege counsel was ineffective. *See Kimbrough v. United States*, 71 F.4th 468, 472 (6th Cir. 2023) (a change in law "must be so obvious that no 'reasonable' jurist or attorney could fail to foresee it" to constitute ineffective assistance of counsel). Kelsey has failed to demonstrate that he received ineffective assistance, or that he suffered any prejudice, on this claim.

Furthermore, Kelsey pleaded guilty not only to accepting excessive contributions (Count 5), in violation of 52 U.S.C. § 30116(a)(1)(A) and related provisions, but also to a conspiracy to defraud the United States for the purpose of impeding the lawful functions of the FEC, in violation of 18 U.S.C. § 371 (Count 1), also known as a *Klein* conspiracy. DE 73 at 3. Count 1 related to Kelsey's admission that he caused Political Organization 1 to make false reports to the FEC that Political Organization 1's expenditures supporting Kelsey's campaign were independent when, in truth and in fact, they were coordinated by Kelsey's agents. DE 73 at 8–9. This is a separate and distinct offense from Count 5 and does not rise or fall on the future constitutionality of Title 52 offenses related to campaign finance. Kelsey's was sentenced to concurrent terms of imprisonment for both offenses. Therefore, even if Bruno were somehow ineffective for not filing a motion to dismiss Count 5, Kelsey has failed to carry his burden to demonstrate he suffered any prejudice.

### C.    Kelsey's Allegations of Prosecutorial Misconduct Are Not Credible on Their Face.

Kelsey alleges prosecutorial misconduct relating to newly discovered, surreptitious recordings that Kelsey and a member of the public made of witnesses who may have testified had the case proceeded to trial. Mem. 15–21.  He claims that these recordings suggest that he is

19

innocent of the crimes to which he pleaded guilty and that other "documentary evidence in the case exonerates" him. Mem. at 22.

As noted above, Kelsey is foreclosed from mounting a collateral attack to his conviction on the grounds of "actual innocence." *See* p. 6, *supra*. As a result, the purported recordings have very little relevance to his § 2255 proceedings under the proper standards of review, particularly given his guilty plea and sworn admissions. *See* Part II.A., *supra* (explaining why Kelsey's guilty plea and sworn statement of facts "constitute a formidable barrier" for his § 2255 petition). In any event, as described below, the recorded statements Kelsey has identified are far from trustworthy eyewitness accounts of his innocence. He simply asserts that these recordings undermine Jeremy Durham's sworn testimony before the grand jury and, with respect to Joshua Smith, Kelsey's own decision to plead guilty. As described below, neither assertion is credible. Even if one were to assume that the recordings undermined their testimony, Kelsey has, at best, identified a factual dispute about whether the credibility of two witnesses is in question. However, it does little to prove that his conviction was constitutionally defective due to prosecutorial misconduct. This is true especially given that Kelsey personally admitted—under oath—the facts supporting his conviction.

### 1.     The alleged recording of Smith is not exculpatory.

Kelsey claims that the government violated its discovery obligations by suppressing a recording that a member of the public made of a conversation with potential trial witness Joshua Smith. Mem. at 15–18. *Brady* requires the government "to turn over evidence in its possession that is *both* favorable to the accused and material to guilt or punishment." *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). "'[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

different.'" *Id.* (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 40 (1987)). "'A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" *Id.*

The government is working to determine whether the alleged recording was ever in its possession during the investigation or prosecution of Kelsey's offenses. The individual who Kelsey alleges made the recording is known to law enforcement as a person with a history of mental illness who has made numerous unsubstantiated accusations against multiple public officials and individuals with public personas. Regardless, even if the government did possess the recording, the alleged statement is not exculpatory on its face. According to Kelsey's filing, Smith told the individual, who was accusing Smith of defrauding him, "Man, I'm under investigation . . . for something totally unrelated, that I had nothing to do with either." DE 201 at 8. This cryptic comment makes no reference to this case or, importantly, to Kelsey. It is hardly the denial of guilt that Kelsey claims it to be.

Kelsey claims that this recording "was material because it was Smith's *admission* of guilty that was the immediate impetus for Mr. Kelsey's guilty pleas." Mem. at 17. By Defendant's own admission, therefore, it was not the content of Smith's statements, but the *fact* that Smith pleaded guilty, that caused Defendant to enter his guilty plea. Therefore the content of the recording is irrelevant.

In any event, any assertion that Smith's offhand recorded comment would have affected Kelsey's decision to plea guilty is not credible, particularly considering the fact that the government turned over to Kelsey—before his guilty plea—ample evidence that, prior to pleading guilty, Smith had previously denied his own involvement in the criminal scheme. As Kelsey quietly references in his petition (but not in the instant Motion), before Kelsey pleaded guilty, the government turned over to Kelsey multiple documents reflecting that, prior to pleading guilty,

Smith had repeatedly disclaimed his own involvement in any criminal scheme involving Kelsey. *See* DE 201 at 47. Those documents included, among others, FBI 302 reports, Smith's grand jury testimony, and even "a record of [Smith] passing a lie detector test in which he proclaimed his innocence." *Id.* Kelsey and his counsel were surely aware of Smith's prior statements because they appended several of them to Kelsey's sentencing submission. *See* DE 148 Exs. 2, 4, 6.

In one 302, the government disclosed that "Smith asserted that nothing was coordinated with Kelsey about the donation to the PAC." DE 148 Ex. 4. In another, Smith said that he believed Durham was conspiring to "make[] Smith look guilty when Durham and Kelsey are the ones that committed a crime." DE 148 Ex. 6. Given this record, Smith's ambiguous recorded statement is neither exculpatory as to Kelsey, nor is it credible to believe that it would have affected his decision to plead guilty. Moreover, the recording would have been inadmissible hearsay if Kelsey attempted to use it at trial and, even if it were somehow admissible, would have had minimal, if any, impeachment value. *See United States v. Ogden*, 685 F.3d 600, 605 (6th Cir. 2012) (holding that because conversations were not admissible, "they were not subject to *Brady*, since that rule applies only to evidence that is 'admissible at trial' or that would lead directly to admissible evidence" (quoting *United States v. Phillip*, 948 F.2d 241, 249–50 (6th Cir. 1991)).

Kelsey can show no prejudice for additional reasons. Smith was not charged alongside Kelsey in Count 5, the substantive coordination count to which Kelsey pleaded guilty and which is the focus of his entire petition. Smith ultimately pleaded guilty solely to Count 2, which involved the illegal transfer of soft money, a separate and factually distinct offense. Given Kelsey and Smith did not plead guilty to overlapping counts, Kelsey's claim that an alleged exculpatory statement as to Smith would also be exculpatory as to Kelsey's decision to plead guilty does not withstand scrutiny.

22

Finally, Kelsey's claim that Smith's statements are material to his guilt is drastically undercut by the fact that Kelsey himself—under oath—admitted that he committed the crimes for which he was convicted. Thus, he cannot demonstrate that the Smith recordings impacted his guilt of the crimes that he admitted.

> ## 2. Durham's purported after-the-fact, unsworn statements contradict his sworn grand jury testimony and Kelsey's sworn plea and are not credible on their face.

Finally, Kelsey claims "that the government coerced false testimony from Durham to the grand jury." Mem. at 18. The evidence he proffers is two alleged conversations with Durham, a potential government witness had this case proceeded to trial, that Kelsey secretly recorded without Durham's knowledge or consent. Mem. at 6, 18. Kelsey made one of the recordings in November 2023, and yet he waited more than year to disclose its existence to the government or the Court. The Court should give Durham's purported after-the-fact, unsworn statements little—if any—weight.

As Kelsey and his current counsel are aware, Durham, himself an attorney, testified under oath before the grand jury. *See* DE 148, Ex. 7 (Kelsey's counsel attaching Durham's grand jury transcript to Kelsey's sentencing papers). He was advised, and acknowledged he understood, that "if you lie, don't tell the full truth, or make other false statements you can still be prosecuted for perjury, making false statements, or obstruction." *Id.* at 4. Durham affirmed that his "attorney participated" in his prior meetings with the government. *Id.* at 6. He explained that it was his "intention to create a statement that [he] could read to the grand jury" and that he "ha[d] a chance to discuss and review [his] statement with [his] attorney." *Id.* at 6–7. Durham swore that "the words in [the] statement [were his] words" and that "they [were] true and accurate." *Id.* at 7. He then proceeded to deliver his statement to the grand jury. *Id.*

Kelsey's allegation that the government took an "active role in knowingly procuring . . . false testimony and using it to indict an innocent person," Mem. at 18, is spurious and facially absurd. Durham repeatedly acknowledged his oath to tell the truth and affirmed ownership of his testimony. He was represented at every juncture by Peter Strianse, experienced criminal counsel, who surely would have stepped in if the government was "[c]oercing false testimony" from his client, "threatening" him, and exclaiming, "You're lying! You're about to lose your immunity." Mem. at 18, 20.

Kelsey claims that his conversations with Durham years after he testified before the grand jury—which Kelsey concedes Durham did not know were being recorded—are more credible than sworn grand jury testimony under penalty of perjury "because they are statements against interest." Mem. at 18. Kelsey cites no authority to back up this illogical assertion. He apparently does not consider the possibility that Durham, in what he thought were private conversations, was interested in simply telling his friend Kelsey, the best man at Durham's wedding, DE 148, Ex. 7 at 7, what he thought Kelsey wanted to hear. Durham's purported statements appear to be nothing more than self-serving attempts to deflect blame for the fact that Kelsey was convicted for his crimes. Because they contradict Kelsey's sworn admissions in his plea agreement and Durham's sworn grand jury testimony they are "'patently incredible' and 'patently frivolous or false'" and should be given minimal—if any—weight. *Lemaster*, 403 F.3d at 221 (quoting *Blackledge*, 431 U.S. at 74). Above all, they do not give rise to a substantial question of law justifying release pending Kelsey's § 2255.

## CONLCUSION

Kelsey has failed to demonstrate that "exceptional circumstances" entitle him to release pending the resolution of his § 2255 petition. Further, he has not alleged a "substantial question of

24

law," nor has he demonstrated a "substantial likelihood of success" on his § 2255 petition. His motion should be denied.

Respectfully submitted,

ROBERT E. MCGUIRE
Acting United States Attorney
Middle District of Tennessee

By:

*/s/ Kathryn W. Booth*
KATHRYN W. BOOTH
Assistant U.S. Attorney
719 Church Street, Suite 3300
Nashville, TN 37203
(615) 736-5151
Email: kathryn.booth@usdoj.gov

REAGAN FONDREN
Attorney for the United States, Acting under Authority
Conferred by 28 U.S.C. § 515
Western District of Tennessee

By:

*/s/ David Pritchard*
DAVID PRITCHARD
Assistant U.S. Attorney
Western District of Tennessee
167 North Main Street, Suite 800
Memphis, TN 38103
(901) 544-4231
Email: david.pritchard2@usdoj.gov

JOHN D. KELLER
Acting Chief
Public Integrity Section

By:

*/s/ John P. Taddei*
JOHN P. TADDEI
Trial Attorney
1301 New York Ave. NW
Washington, DC 20530
(202) 514-3885
Email: john.taddei@usdoj.gov

## CERTIFICATE OF THE SERVICE

I certify that a copy of the foregoing response in opposition was served electronically, via

ECF, this 30th day of January 2025, upon all counsel of record in the case.

*s/ Kathryn W. Booth*
KATHRYN W. BOOTH
Assistant U.S. Attorney
