UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff / Respondent,<br><br>v.<br><br>BRIAN KELSEY,<br><br>    Defendant / Movant. | No. 3:21-cr-00264-1 |

**BRIAN KELSEY'S REPLY IN SUPPORT OF MOTION FOR DISCOVERY
PURSUANT TO RULE 6(A) OF THE RULES GOVERNING § 2255 PROCEEDINGS**

Joy Boyd Longnecker
Barnes & Thornburg, LLP
1600 West End Avenue
Suite 800
Nashville, TN 37203-3494

Kent Wicker
WICKER / BRAMMELL PLLC
323 West Main Street, 11th Floor
Louisville, Kentucky 40202
(*Admitted pro hac vice*)

i

"The lady doth protest too much, methinks." The government spends 11 pages vigorously disputing that it committed prosecutorial misconduct. Then, it paradoxically concludes that no discovery or hearing is necessary to resolve this undeniable factual dispute. The government's denial of the wrongdoing its primary witness alleges on two audio recordings warrants a further inquiry into *who* is telling the truth. The government should turn over the statements it drafted that Jeremy Durham refused to sign. But it refuses to even say whether such statements exist.

Mr. Kelsey provides further evidence of potential wrongdoing in a declaration from State Representative Michael Sparks, who swears he felt that the lead prosecutor "had some type of personal vendetta or issue with Senator Kelsey." Sparks Decl. at 4, ¶ 13, attached as Exhibit 1. According to Rep. Sparks, the prosecutor told him that when he spoke to the Grand Jury, he had to "stick to the 'script.'" *Id*. at 4, ¶ 12. When he refused, he was prohibited from speaking to the Grand Jury. *Id*. at 4-5, ¶¶ 15-17. By contrast, the government has provided no sworn declaration refuting the Durham Recordings from the lead prosecutor, who interviewed Durham and also signed the government's Response opposing Mr. Kelsey's discovery motion.

A final glaring omission from the Response is that the government still cannot–or will not– tell the Court whether it received the Smith Recording–and whether it deleted it. The government continues to sidestep these simple questions. The Court should compel the government, in discovery or otherwise, to answer these questions, which are critical to the Court's determination of whether the government violated *Brady* by not disclosing the Smith Recording—or violated due process by destroying it. With no response in the record to either these questions or whether Durham rejected statements, the Court should grant limited discovery to determine what occurred.

I. **The factual dispute as to whether Durham initially told the government that Mr. Kelsey followed the rules is relevant to whether the government violated *Brady* by not disclosing it.**

As the government admits, Mr. "Kelsey has, at best, identified a factual dispute about

whether Durham's credibility is in question." (Resp. 4.) The government complains that Mr. Kelsey has made "'[b]ald assertions,'" (Resp. 2, 10, quoting *Thomas v. United States*, 849 F.3d 669, 681 (7th Cir. 2017)), and not presented "any evidence" of a prosecutorial misconduct, *id*. at 4. But the two recordings of the government's own star witness *are* the evidence. It is Durham, not Kelsey, who makes the factual assertions that he initially told the government Mr. Kelsey did nothing wrong. Therefore, the assertions are not "bald," and the fact that the government disputes them only confirms the need for discovery.

Mr. Kelsey and this Court deserve to know which version of events is true. When there is a factual dispute as to whether the government committed a *Brady* violation by withholding evidence that could have impeached the government's chief witness, the Court should grant the defendant discovery, a hearing, or both to determine whether the *Brady* violation occurred. *United States v. Velarde*, 485 F.3d 553, 563 (10th Cir. 2007).

**II. The factual dispute as to whether the government threatened to prosecute Durham if he did not agree to one of the statements it drafted is relevant to whether the government violated *Napue* by presenting false testimony to the Grand Jury.**

The government concedes a factual dispute about Durham's credibility. (Resp. 4.) But it then concludes, incredibly, that the dispute "does little to prove … prosecutorial misconduct." *Id*. But it is *Durham* who raised the issue of prosecutorial misconduct, so resolution of the factual dispute over his credibility is vital to this Court's determination of whether prosecutorial misconduct occurred. The government contends that the Durham Recordings are "far from trustworthy eyewitness accounts," *id*., but they are certainly eyewitness accounts. And if Durham is ultimately deemed not trustworthy, then the government must explain why it has prosecuted this case by relying solely on his word.

The government's attempt to undercut Mr. Kelsey's new evidence by pointing to other evidence is absurd. "[B]ank records," (Resp. 7), reveal nothing because the parties disclosed the

2

transactions on the internet. (Doc. 201 at 14.) The annual legislative scorecard email that Mr. Kelsey sent to the ACU, (Resp. 7), was used, as intended, for the ACU scorecard and not for advertisements. (Doc. 198-5 at 3-4, ¶¶ 5-9.)[1] The "toll records," (Resp. 7), reveal that Mr. Kelsey talked only to Durham, a fact which proves that the entire case rests on his word.[2] Finally, "interview reports and grand jury transcripts of other witnesses," (Resp. 7), fail to name other direct witnesses because there are none.

Furthermore, the facts Mr. Kelsey admitted in his plea agreement, which the government breached, are not consistent with Durham's grand jury testimony. *Contra* Resp. 4-5. They differ in many respects. For example, the plea agreement does not state that Durham told Mr. Kelsey about any conversations with ACU, and Durham's admission of that fact in the recordings effectively negates the coordination count to which Mr. Kelsey pleaded guilty. *See* Doc. 73. Also, in the plea agreement, Mr. Kelsey never explicitly directed Durham regarding the funds—only implicitly, per Paul Bruno's insertion. (Doc. 198 at 20.) Regardless, this Court found that Mr. Kelsey did not "engage[] in the behavior set forth in the factual basis." (Doc. 157 at 18.)

The reasons Mr. Kelsey pleaded guilty are not mutually exclusive. The only testimony directly linking Mr. Kelsey to criminal activity is Durham's grand jury statement. For that reason, Mr. Kelsey demanded to read it prior to pleading guilty. (Doc. 198-2 at 4-5, ¶ 9.) As Mr. Kelsey declared, "Smith's guilty plea had been the proximate cause for me allowing my counsel to enter into settlement negotiations with the government, and Durham's grand jury statement was the most significant piece of evidence to cause me to plead guilty." *Id*. That is why the Durham Recordings are so important. Evidence available through the discovery requested–that Durham's grand jury

---

[1] Furthermore, it is explicitly exempted from coordinated campaign communications. 11 C.F.R. § 109.21(f); *see also* 52 U.S.C. § 30111(e); Doc. 201 at 59.
[2] With the exception of one call with Andrew Miller, which is easily explained and not criminal. (Doc. 198 at 30-31.) Miller's grand jury transcript mentions no other exchanges with Mr. Kelsey.

3

statement was the result of a multi-draft "negotiation" and contained a mixture of true and false information–is pivotal to whether Mr. Kelsey's guilty plea was induced by prosecutorial misconduct. In addition, if Mr. Kelsey had the admissible Smith Recording with which to impeach Smith, he would have accorded Smith's trial testimony far less weight in his plea bargain calculus.

The other items Mr. Kelsey seeks discovery about are relevant to his claims of prosecutorial misconduct. "Drunken, sobbing voicemails" that Durham claims to have left with several friends would verify Durham's recorded statements that he told the government Mr. Kelsey was actually innocent, before being pressured to change his story, and he now feels guilty about giving into the pressure. *Contra* Resp. 9. Likewise, because Durham claims that he changed his story in response to government threats to revoke his immunity, Mr. Kelsey deserves discovery into the full scope of his immunity. *Contra id*. Finally, the extent to which Durham was under the influence of prescription or illegal drugs or alcohol when he testified before the Grand Jury bears directly on his credibility. *Contra id*. It is the Court's prerogative to review Mr. Kelsey's proposed discovery requests and select which ones are reasonably calculated to lead to the discovery of evidence relevant to his § 2255 motion. If some are "largely privileged, and undiscoverable," Resp. 11, the Court can strike those, but the Court should order the government to reveal, at minimum, whether Durham rejected other statements it drafted and whether it received the Smith Recording.

The government's claim that Durham's statements on the recordings, if true, would be insufficient to vacate Mr. Kelsey's sentence, (Resp. 2-3), strains credulity. It is hard to fathom what evidence *would* be material to Mr. Kelsey's motion to vacate if not evidence that a *Brady* and a *Napue* violation occurred prior to his guilty plea. *Contra* Resp. 6. As Rule 6(a) says, "A judge may, for good cause, authorize a party to conduct discovery" in a § 2255 action. Here, the Durham–and Smith–Recordings are good cause for discovery related to these potential violations. *See United States v. Dollison*, No. 3:09-cr-00106, 2017 WL 3873698, (D. Alaska Sept. 4, 2017).

4

**III.     Section 2255 motions can and do succeed, even after a guilty plea.**

Once again, the government relies heavily on Mr. Kelsey's guilty plea in opposing his discovery motion, (Resp. 5), but a guilty plea does not preclude the Court from vacating a sentence under §2255, granting release pending the decision, or allowing discovery. *See Dollison*. In *Dando v. Yukins*, 461 F.3d 791 (6th Cir. 2006), the Sixth Circuit allowed a motion to vacate under § 2255 to proceed after the defendant had pleaded guilty due to potential ineffective assistance of counsel, which is one of the two claims in Mr. Kelsey's motion. In *United States v. Lyons*, No. 21-00079, 2024 WL 3898550, at *4-8 (D.D.C. Aug. 22, 2024), former Chief Judge Beryl Howell granted release pending review of a § 2255 claim, even though the defendant had not filed a direct appeal. She noted that the government conceded *at least* three ways a defendant can show exceptional circumstances, one of which Mr. Kelsey asserts: "'"short sentences for relatively minor crimes so near completion that extraordinary action is essential to make collateral review truly effective."'" *Id*. at *7 (quoting Gov't Opp'n, quoting *United States v. Roberts*, 250 F.3d 744 (5th Cir. 2001)). Here, the government took the opposite position. Doc. 207 at 6. Also, the strength of Mr. Kelsey's substantial claim of law on Mr. Little's *admitted* ineffective assistance, based on a binding, appellate decision, constitutes an exceptional circumstance, *contra* Doc. 207 at 4: "In the habeas context, this court has reserved bail for 'extraordinary cases involving special circumstances or a high probability of success.'" *United States v. Mett*, 41 F.3d 1281, 1282 (9th Cir. 1994). Yet another exceptional circumstance is the change in law that was relevant in *Lyons* and is also relevant here. There, the Supreme Court invalidated the government's charging statute, as applied to the defendant, *see Fischer v. United States*, 603 U.S. 480 (2024), and here the Sixth Circuit has opined that the Supreme Court is likely to do the same. *See NRSC v. FEC*, 117 F.4th 389 (6th Cir. 2024) (*en banc*). Whether Mr. Kelsey pleaded guilty is irrelevant to all these discussions.

For these reasons, Mr. Kelsey respectfully requests that this Court grant limited discovery.

5

Respectfully submitted,

*/s/ Joy Boyd Longnecker*
Joy Boyd Longnecker
Barnes & Thornburg, LLP
1600 West End Avenue, Suite 800
Nashville, TN 37203-3494

*/s/ Kent Wicker*
Kent Wicker
323 West Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 780-6185
*(Admitted Pro Hac Vice)*

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served through the CM/ECF system, which will send notice of electronic filing on this 12th day of February, 2025.

Kathryn W. Booth
U.S. Attorney's Office
719 Church Street Suite 3300
Nashville, TN 37203
kathryn.booth@usdoj.gov

David Pritchard
Assistant United States Attorney
167 North Main Street, Suite 800
Memphis, TN 38103
david.pritchard2@usdoj.gov

John P. Taddei
U.S. Department of Justice Public Integrity Section
1301 New York Ave. NW Ste 10th Floor
Washington, DC 20530
john.taddei@usdoj.gov

*/s/ Joy Boyd Longnecker*
Joy Boyd Longnecker